Jonathan Kirk DUHIG, Appellant

v.

The STATE of Texas, Appellee.

No. 14–03–01076–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 16, 2005.

Allen C. Isbell, Houston, TX, for appellant.

Scott A. Durfee, Houston, TX, for appellee.

Panel consists of Justices ANDERSON, FROST and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

After the trial court denied his pre-trial motion to suppress, appellant, Jonathan Kirk Duhig, pleaded guilty to possession with intent to deliver methamphetamine. The trial court sentenced appellant to nine years and eleven months' confinement. In four issues, appellant contends the trial court erred by denying his motion to suppress. We affirm.

### I. BACKGROUND

At the motion to suppress hearing, the trial court heard testimony from Ron Morrison, a narcotics deputy with the Harris County Sheriff's Department. Deputy Morrison testified that on March 18, 2003, during a traffic stop, a passenger in the vehicle informed him that there were possibly narcotics at 12011 Lennington Street in Houston. At approximately 3:00 a.m., the passenger showed Deputy Morrison the house. After the rest of Deputy Morrison's "hot spot" team arrived, he and five other deputies decided to do a "knock and talk," which is an attempt to contact the owner of the house. Deputy Morrison knocked on the front door approximately ten times but received no answer although he heard movement and noticed a television was on in a bedroom. The top portion of the front door had a crescent-shaped window. Using a flash light, Deputy Morrison, who is six feet, three inches tall looked through the window while standing on his tiptoes.[1] He saw a jar of what appeared to be marijuana, a digital scale, and a pipe or "bong" on a coffee table in the living room.

The deputies then decided to go to the back of the house to see if anyone was in the house. It is disputed whether they had unrestricted access to the backyard.

---

1. Appellant presented evidence that the window was seventy inches from the ground.

Deputy Morrison testified they did not have to cross or pass through any fences in order to reach the backyard. In contrast, appellant presented evidence that a gated fence blocked access to the side yard, and another gated fence blocked access from the side yard to the backyard. In any event, the deputies approached the back of the house. A glass patio door was open approximately six inches. Deputy Morrison peered through the glass door using his flashlight and had a clearer view of the coffee table in the living room. He also smelled marijuana coming from an air conditioning unit and observed a marijuana-growing lab through a broken window partially covered with cardboard.

According to Deputy Morrison, the open patio door gave the deputies concern that a drug-related home invasion might be occurring. They decided to enter the house out of concern for the residents. They found a woman hiding in one room and appellant hiding in another room. While searching for other possible perpetrators, they saw the marijuana-growing lab they had earlier observed from the backyard. The deputies placed appellant and the woman in a patrol car.

The other deputies remained at the house while Deputy Morrison obtained a search warrant. A magistrate issued the search warrant based upon Deputy Morrison's affidavit outlining his observation through the front door window and his observations while outside the back door. The deputies found the methamphetamine forming the basis of appellant's conviction after Deputy Morrison obtained the search warrant. Appellant filed a motion to suppress contending the search warrant was invalid. The trial court denied the motion to suppress and allowed appellant to appeal its ruling.

## II. MOTION TO SUPPRESS

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard, giving almost total deference to the trial court's determination of historical facts supported by the record, and reviewing *de novo* the trial court's application of the law of search and seizure. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Guzman v. State,* 955 S.W.2d 85, 88–89 (Tex.Crim. App.1997); *Marsh v. State,* 140 S.W.3d 901, 905 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd). In a motion to suppress hearing, the trial court is the sole trier of fact and the sole judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000); *Marsh,* 140 S.W.3d at 905. The trial court is free to believe or disbelieve all or any part of a witness's testimony, even if the testimony is uncontroverted. *Ross,* 32 S.W.3d at 855; *Marsh,* 140 S.W.3d at 905.

Appellant contends the trial court erred by denying his motion to suppress because the search warrant used to seize the methamphetamine was invalid. In his first three issues, appellant asserts that Deputy Morrison's affidavit, upon which the search warrant was based, contained information obtained in violation of the Fourth Amendment and misrepresentations because (1) Deputy Morrison conducted an impermissible, warrantless search by looking through the front door window, (2) the deputies trespassed or conducted an impermissible, warrantless search by entering appellant's backyard and approaching the back door, and (3) the deputies entered his house without a warrant. In his fourth issue, appellant contends in general that the search warrant was invalid for the reasons set forth in his

first three issues.[2]

## A. Observation through the Front Door Window

██ First, appellant contends that Deputy Morrison conducted an impermissible, warrantless search when he looked through the window on appellant's front door and observed marijuana and drug paraphernalia on the coffee table.[3] The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. A search conducted without a warrant issued upon probable cause is *per se* unreasonable subject only to a few specifically established and well-delineated exceptions. *See Reasor v. State,* 12 S.W.3d 813, 817 (Tex.Crim.App. 2000); *Wilson v. State,* 99 S.W.3d 767, 769 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd). For Fourth Amendment purposes, a "search" does not occur, even when the explicitly protected area of a house is concerned, unless the individual manifested a subjective expectation of privacy in the object of the challenged search, and soci-

ety is willing to recognize that expectation as reasonable. *Porter v. State,* 93 S.W.3d 342, 346 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (citing *Kyllo v. United States,* 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001)).

██ Appellant argues that the officers violated his subjective expectation of privacy by approaching his front door and looking through the window. We disagree. Absent express orders from a person in possession of property not to trespass, anyone, including a law enforcement officer or common citizen, has the right to approach the front door of a residence and knock on the door. *Cornealius v. State,* 900 S.W.2d 731, 733–34 (Tex.Crim.App. 1995); *Bower v. State,* 769 S.W.2d 887, 897 (Tex.Crim.App.1989), *overruled on other grounds by Heitman v. State,* 815 S.W.2d 681, 685 (Tex.Crim.App.1991); *Porter,* 93 S.W.3d at 345. Here, Deputy Morrison's uncontroverted testimony was that the deputies approached the front door to do a "knock and talk."[4] The trial court made a

2. The Court of Criminal Appeals recently articulated an exception to the general standard for reviewing a ruling on a motion to suppress. *Swearingen v. State,* 143 S.W.3d 808, 810–11 (Tex.Crim.App.2004). A magistrate's determination of probable cause to issue a search warrant should be given great deference and not reviewed *de novo* based on the Fourth Amendment's strong preference for searches conducted pursuant to a warrant and the need for an incentive to encourage police to use the warrant process. *Id.* Thus, a distinction exists between the standards of review applicable to warrantless searches and searches pursuant to a search warrant. *Id.* at 811. Here, appellant does not challenge whether the magistrate had probable cause to issue the search warrant based on Deputy Morrison's affidavit as a whole. Instead, he contends there was no probable cause because the information in Deputy Morrison's affidavit was obtained through impermissible, warrantless searches and must be excised. Therefore, we will apply the bifurcated stan-

dard of review applicable to warrantless searches.

3. At the motion-to-suppress hearing, appellant presented evidence that due to the location of the coffee table, Deputy Morrison would not have been able to see the contraband on the table. However, on appeal, appellant no longer argues that the contraband was not visible. Instead, he argues that Deputy Morrison's observation of the contraband was, nonetheless, an impermissible search.

4. Appellant asserts Deputy Morrison did not have "probable cause" to approach the house based on the "tip" he received from the vehicle passenger. However, appellant cites no authority that an officer must have probable cause merely to approach the front door of a home to contact the residents. Appellant also asserts that Deputy Morrison admitted he went to appellant's house on an "exploratory quest" for evidence of drug activity. However, although Deputy Morrison testified that he originally hoped to discover drug activity

finding of fact that the deputies went to the house to do a "knock and talk," and we give deference to that finding. *See Carmouche,* 10 S.W.3d at 327. There is no evidence of a sign or any other directives prohibiting entry onto the property. Thus, the deputies had a right to approach the front door to contact the occupants.

▮▮▮ While rightfully at the front door, the deputies were free to observe evidence in "plain view." What a person knowingly exposes to the public, even in his own home, is not a search subject to Fourth Amendment protection. *Bower,* 769 S.W.2d at 897 (citing *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)); *Long v. State,* 532 S.W.2d 591, 594 (Tex.Crim.App.1975). A search implies a prying into hidden places for that which is concealed. *Long,* 532 S.W.2d at 594. The observation of property in "plain view" involves no invasion of privacy. *Walter v. State,* 28 S.W.3d 538, 541 (Tex.Crim.App.2000); *Swarb v. State,* 125 S.W.3d 672, 680 (Tex.App.-Houston [1st Dist.] 2003, pet. dism'd); *see Long,* 532 S.W.2d at 594.

Nonetheless, appellant suggests that Deputy Morrison's observation through the front door window was not a "plain view" observation based on the nature of the window. Appellant asserts that the window was decorative only and its purpose was to let in light without allowing anyone to look inside the house. However, the window was not made of opaque glass and had no drapes or other covering to prevent anyone from looking through it. *See Bower,* 769 S.W.2d at 897-98 (finding officers did not conduct a search when they approached defendants's front door by the only means of access—a driveway—and observed stolen items through uncur-

tained windows in the garage); *Long,* 532 S.W.2d at 593-95 (finding sheriff, who unsuccessfully attempted to contact occupants while investigating unusual aircraft activity, did not conduct an illegal search by looking through window on which blinds were open after smelling marijuana).

▮▮▮ Appellant also emphasizes that the window was seventy inches from the ground, and Deputy Morrison had to stand on his tiptoes to look through it. However, " '[t]he police are free to observe circumstances and evidence that are in "plain view" to the public.... That the policeman may have to crane his neck, or bend over, or squat, does not render the doctrine inapplicable, so long as what he saw would have been visible to any curious passerby ...' " *Hamilton v. State,* 590 S.W.2d 503, 504-05 (Tex.Crim.App.1979) (quoting *James v. United States,* 418 F.2d 1150, 1151 n. 1 (D.C.Cir.1969) (internal citations omitted)); *see Texas v. Brown,* 460 U.S. 730, 740, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (stating fact that officer had to change his position and bend down at an angle to see heroin-filled balloons in car did not make his observation a search because the public could have peered into the car from any number of angles); *Johnson v. State,* 469 S.W.2d 581, 583-84 (Tex. Crim.App.1971) (finding police did not conduct a search when after unsuccessfully attempting to contact apartment residents, they looked into a window through a two-inch gap between partially drawn draperies and saw stolen merchandise). Therefore, the fact that Deputy Morrison stood on his tiptoes did not transform his "plain view" observation into a search because any curious passerby could have stood on

---

when he went to the house, he also testified that he approached the front door to contact the occupants.

his tiptoes to look through the window and any curious passerby of sufficient height could have looked through the window without standing on his tiptoes. *See Sarantopoulos v. State*, 629 So.2d 121, 122–23 (Fla.1993) (finding that officer's observation of marijuana in defendant's yard by standing on tiptoes in adjacent yard to view over six-foot wooden fence was not an illegal search; defendant did not create a zone of privacy given that his backyard was protected from view only as to those who remained on the ground or were unable to see over the six-foot fence unaided).

■■■ Finally, appellant contends that Deputy Morrison's use of a flashlight turned his observation into a search. However, an officer's use of a flashlight to aid his vision does not transform an otherwise justifiable "plain view" observation into a search. *See Brown*, 460 U.S. at 739–40, 103 S.Ct. 1535; *Howard v. State*, 599 S.W.2d 597, 600 n. 11 (Tex.Crim.App. 1979); *Swarb*, 125 S.W.3d at 680; *see also Onofre v. State*, 474 S.W.2d 699, 701 (Tex. Crim.App.1972) (stating that the "plain view" doctrine does not go into "hibernation at sunset."). Consequently, Deputy Morrison's use of a flashlight to illuminate appellant's living room did not transform his "plain view" observation into a search.

Accordingly, Deputy Morrison's "plain view" observation of the marijuana and drug paraphernalia through the front door window was not a search. We overrule appellant's first issue.

## B. Entry into the Backyard

■■■ Next, appellant contends that the deputies committed a trespass or impermissible, warrantless search by entering his backyard and approaching his back door. The Fourth Amendment protections extend to the curtilage of a home. *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); *Gonzalez v. State*, 588 S.W.2d 355, 360 (Tex. Crim.App.1979). "Curtilage" is the land immediately surrounding and associated with the home. *State v. Peyrani*, 93 S.W.3d 384, 387 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd). However, not every trespass upon the curtilage constitutes a search. *See Washington v. State*, 152 S.W.3d 209, 214–15 (Tex.App.-Amarillo 2004, no pet.); *Buchanan v. State*, 129 S.W.3d 767, 771–73 (Tex.App.-Amarillo 2004, pet. ref'd); *Watts v. State*, 56 S.W.3d 694, 699 (Tex.App.-Houston [14th Dist.] 2001), *rev'd on other grounds*, 99 S.W.3d 604 (Tex.Crim.App.2003). An officer may enter the curtilage of a house in an effort to contact its occupant when the occupant has not manifested his intent to restrict access by locking a gate or posting signs informing the officer he is not invited or the officer does not deviate from the normal path of traffic. *Washington*, 152 S.W.3d at 215; *Buchanan*, 129 S.W.3d at 773.

Several courts have found that no search occurs when police officers approach the back door of a home merely to contact the residents after they have first tried the front door and received no answer. *See Gonzalez*, 588 S.W.2d at 357–60 (finding that game warden's initial action in approaching back door after receiving no response at front door did not constitute a search); *Long*, 532 S.W.2d at 593–95 (holding that sheriff who knocked at the front door of home and received no answer, then knocked at the back door and also received no answer, and then while returning to his car, smelled marijuana though an open window, did not conduct a "search"); *Watts*, 56 S.W.3d at 700–01 (holding officers did not conduct a search when after receiving no answer at front door, they went to the back door to knock and observed raw sewage at issue); *cf. Peyrani*,

93 S.W.3d at 387–88 (upholding ruling that officers conducted an unconstitutional, warrantless search when they failed to knock at the front door and instead walked around to the fenced backyard and observed marijuana). Here, Deputy Morrison's uncontroverted testimony was that the deputies went to the back of the house to see if there were any persons in the house after knocking on the front door and receiving no answer. The trial court made a finding of fact that Deputy Morrison went to the backyard to contact the occupants, and we give deference to that finding. *See Carmouche,* 10 S.W.3d at 327.

Nevertheless, appellant asserts that the deputies' entry into his backyard was impermissible because he had restricted access to the backyard, and, thus, had an expectation of privacy. Rudy Vargas, an investigator hired by appellant, viewed the property approximately six months after the incident. He testified that a gated, chain-link fence blocked access to the side yard, and another gated, chain-link fence blocked access from the side yard to the backyard. Appellant averred by affidavit that he could not recall whether the gate to the side yard was closed on the night of this incident, but the gate on the fence between the side yard and backyard is always closed to prevent his dog from escaping. Appellant presented photographs and a videotape purporting to show the fences at issue.

In contrast, Deputy Morrison testified there were no fences restricting access to the backyard on the night of the incident; specifically, the fences depicted in the photographs were not present that night. In its findings of fact, the trial court found that Deputy Morrison was credible and

Vargas and appellant were not credible. Moreover, after reviewing the condition of the fence depicted in the photographs and video, the trial court found that the fence had been erected after the search warrant was executed. Because the trial court was the sole judge of the credibility of the witnesses, we give deference to its determination that there were no fences restricting the deputies' access to the backyard. *See id.*

Consequently, because the deputies had unrestricted access to the backyard, they did not trespass or conduct a search when they approached the back door to contact the occupants. Finally, while the deputies were at the back door, Deputy Morrison had a clearer view through the back patio door of the marijuana and drug paraphernalia on the living room coffee table, smelled marijuana from an air conditioning unit, and saw a marijuana-growing lab through a partially-covered broken window.[5] Because the deputies were permissibly at the back door, Deputy Morrison's "plain view" observations do not constitute searches. We overrule appellant's second issue.

## C. Entry into the House

In his third issue, appellant complains that the deputies entered his house without a warrant. In response, the State argues that the deputies were justified in entering the house pursuant to the "emergency doctrine." *See Brimage v. State,* 918 S.W.2d 466, 500–01 (Tex.Crim.App. 1996) (op. on reh'g) (recognizing that pursuant to the emergency doctrine, the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe

---

**5.** In his affidavit supporting the search warrant, Deputy Morrison gave further details about the marijuana-growing lab. He saw approximately one hundred marijuana plants and heard a generator; based on his training and experience, generators are used to grow large amounts of marijuana in enclosed structures.

that a person within is in need of immediate aid). We need not decide whether the deputies were justified in entering appellant's house pursuant to the emergency doctrine because Deputy Morrison's affidavit did not include any observations made while inside the house. The affidavit outlined only his observation through the front door window and his observations while outside the back door. Therefore, the search warrant was not based on any observations made while the deputies were inside the house.[6] Accordingly, we overrule appellant's third issue.

## D. Validity of the Search Warrant

In his fourth issue, appellant contends that the search warrant was invalid because Deputy Morrison's affidavit contained information obtained in violation of the Fourth Amendment and misrepresentations as argued in appellant's first three issues. Because we have rejected these arguments, we overrule his fourth issue. Therefore, the trial court did not err by denying appellant's motion to suppress.

Accordingly, the judgment of the trial court is affirmed.

---

6. Further, the deputies did not discover any additional contraband while they were inside the house *before* the search warrant was obtained. Although they saw the marijuana-growing lab while inside the house, they had previously observed the lab from outside the house.