COURT 
OF APPEALS
                                       
SECOND DISTRICT OF TEXAS
                                                   
FORT WORTH
 
 
                                        
NO.  2-04-179-CR
 
 
KIMBERLY 
VAN FLOWERS                                                    
APPELLANT
 
                                                   
V.
 
THE 
STATE OF TEXAS                                                                
STATE
 
                                              
------------
 
              
FROM THE 271ST DISTRICT COURT OF WISE 
COUNTY
 
                                              
------------
 
                                
MEMORANDUM 
OPINION[1]
 
                                              
------------
                                         
INTRODUCTION

Appellant 
Kimberly Van Flowers appeals his conviction for possession of a controlled 
substance, methamphetamine, greater than 4 grams but less than 200 grams.  Appellant filed a pretrial motion to 
suppress evidence seized based upon consent he claimed was involuntary and 
tainted by a previous illegal search.  
After a hearing, the trial court denied his motion to suppress.  Appellant thereafter pleaded guilty and 
was placed on ten years= 
deferred adjudication community supervision.  The trial court has certified that it 
granted permission to appeal and that Appellant has the right of appeal.  See Tex. R. App. P. 25.2(a)(2).  We affirm.
                                   
FACTUAL BACKGROUND
In 
the early morning hours of February 22, 2003, a Rhome police unit made a traffic 
stop of a car driven by Appellant=s 
girlfriend, Michelle Wallace. Because Michelle had outstanding warrants, the 
officer on the scene arrested her.  
Appellant stopped on the opposite shoulder of the road and was watching 
the traffic stop, so the Rhome officer called for backup.  Officers Lanier and Stack of the Wise 
County Sheriff=s 
Department responded.  
Michelle=s 
brother, Robert, was a passenger in the car with Michelle.  Because Robert=s 
driver=s 
license was suspended or expired, Officer Lanier gave him a ride to 
Appellant=s 
house.  It was disputed whether the 
idea to go to Appellant=s 
house was that of Officer Lanier or Robert. 

Officer 
Lanier knew Appellant and knew that Appellant had a felony warrant out of Parker 
County for his arrest.  He 
acknowledged that the purpose of his going to Appellant=s 
house was to arrest him.  When 
Officer Lanier arrived with Robert, Appellant was outside on his porch.  Officer Lanier told Appellant he was 
under arrest, handcuffed him, and placed him in the back of the squad car.  Robert went inside Appellant=s 
house. 
The 
facts are in dispute as to the events that followed.  Officer Lanier  asked Appellant if he wanted Robert to 
stay in the house or leave, and Appellant responded that Robert could stay, 
especially since he was Appellant=s  future brother-in-law.  According to Officer Lanier, Appellant 
asked him to tell Robert to lock the house if he left and that the keys were on 
the TV.  Officer Lanier testified he 
then went back to the front door with Appellant=s 
approval to explain to Robert to lock the house if he left.  
Officer 
Lanier recalled that the night was cool, but that Robert had left the front door 
open when he went in and only the screen door was closed.  Once on the front porch, Officer Lanier 
said, he looked through the screen, saw a glass pipe and some razor blades in 
clear view on a coffee table beside the couch, and noticed a strong smell he 
believed to be ether associated with a Ameth 
house,@ 
based upon his training and experience in the field.  Officer Lanier testified he did not 
enter the house at that time. 

Appellant 
denied asking Officer Lanier to speak to Robert, and testified there was no 
reason for Officer Lanier to say anything to Robert.  Both Appellant and Robert testified 
contrary to Officer Lanier that the front door and the screen door were closed 
when Officer Lanier returned to the front porch.  According to both Appellant and Robert, 
Officer Lanier opened the front door and walked in without knocking or asking 
permission to enter.  Robert 
testified he had closed the door when he entered and was lying on the couch when 
Officer Lanier walked in, and that Officer Lanier scanned the room with a 
flashlight and discovered the pipe in a wicker basket, not on the coffee table. 


Officer 
Lanier testified that, after seeing the pipe and razor blades on the table and 
noticing the smell of ether, he returned to the squad car and called Detective 
Hanks for assistance.  With 
Detective Hanks present, Officer Lanier told Appellant about the items he had 
seen along with the smell.  Officer 
Lanier and Detective Hanks then asked Appellant to give written consent to 
search the house, and it was undisputed that he agreed to do so.  The officers uncuffed Appellant and led 
him to the front of the squad car.  
Appellant conceded that Officer Hanks gave him the Miranda[2] 
warnings and read him the consent form, which Appellant then signed.  Officer Lanier testified Appellant 
stated he wanted to cooperate and make it easier on himself, and, knowing that 
Appellant was a former police officer, Officer Lanier believed Appellant 
understood he could refuse.  The 
investigation was then turned over to the narcotics task force, which conducted 
a search and seized the contraband made the basis of the indictment and the 
subject of the motion to suppress.  

                                    
MOTION TO SUPPRESS
Appellant=s 
sole point, as framed by his brief, is that the trial court erred in ruling that 
his consent to the search and seizure was not tainted by Officer 
Lanier=s 
prior illegal entry into the house.
A.  Standard of Review

We 
review a trial court=s 
ruling on a motion to suppress evidence under a bifurcated standard of 
review.  Carmouche v. State, 
10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 
85, 89 (Tex. Crim. App. 1997).  In 
reviewing the trial court=s 
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 
543 (Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. 
App.CFort 
Worth 2003, no pet.).  In a 
suppression hearing, the trial judge is the sole trier of fact and judge of the 
credibility of the witnesses and the weight to be given to their testimony.  State v. Ross, 32 S.W.3d 853, 855 
(Tex. Crim. App. 2000).  Therefore, 
we afford almost total deference to the trial court=s 
determination of the historical facts that the record supports, and application 
of the law to facts that turn on evaluation of the credibility and demeanor of a 
witness.  Johnson v. State, 
68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); Best, 118 S.W.3d at 
861-62.  We afford the same 
deference to the trial court=s 
rulings on mixed questions of law and fact if the resolution of those questions 
turns on the credibility and demeanor of a witness.  Guzman, 955 S.W.2d at 89.  However, we review de novo a 
trial court=s 
rulings on mixed questions of law and fact if they do not turn on credibility 
and demeanor of witnesses.  
Johnson, 68 S.W.3d at 652-53.
It 
is the duty of the trial court to resolve conflicts in the testimony at a 
suppression hearing.  Hawkins v. 
State, 853 S.W.2d 598, 600 (Tex. App.CAmarillo 
1993, no pet.).  When the trial 
court does not make express findings of fact, we view the evidence in the light 
most favorable to the trial court=s 
ruling and assume the trial court made implicit findings of fact supporting its 
ruling, if such findings are supported by the record.  Carmouche, 10 S.W.3d at 327-28. 


Appellant 
cites Ex parte Peterson, 117 S.W.3d 804 (Tex. Crim. App. 2003) arguing 
that we should use a single de novo standard of review because it cannot 
be determined from the record what the trial court=s 
implicit findings of fact are.  
Peterson held that A[a]lthough 
reviewing courts should also grant deference to >implicit 
factual= 
findings that support the trial court=s 
ultimate ruling, they cannot do so if they are unable to determine from the 
record what the trial court=s 
implied factual findings are.@  Id. at 819.  Here, however, the trial court could 
have implicitly made one of two factual findings:  either Officer Lanier=s 
original discovery of the evidence did not constitute a Asearch@ 
in the legal sense, and thus there was nothing to taint Appellant=s 
consent; or Officer Lanier=s 
initial discovery of evidence resulted from an illegal search, but that the 
search did not taint Appellant=s 
consent.  The determination of 
either fact required the trial court to resolve conflicts in the testimony by 
evaluating the credibility and demeanor of witnesses, because the testimony of 
Officers Lanier and Hanks differed markedly from that of Appellant and 
Robert.  Therefore, we conclude that 
the bifurcated standard of review applies.  
And if the trial court=s 
decision is correct on any theory of the law applicable to the case, the 
decision must be affirmed.  Ross, 
32 S.W.3d at 856.
B.  Application of Law to 
Facts           


Appellant 
has not carried forward on appeal his contention in the trial court that his 
consent was involuntary; rather, he argues that Officer Lanier=s 
alleged entry and search of the house tainted his subsequent consent to the 
search and seizure of the paraphernalia and contraband. It is undisputed that 
Officer Lanier did not initially have a warrant to search Appellant=s 
house.  The Fourth Amendment to the 
United States Constitution provides that the Aright 
of the people to be secure in their persons, houses, papers, and effects, 
against unreasonable searches and seizures, shall not be violated.@  U.S. Const. amend. IV.  A warrantless search is 
presumptively unreasonable under the Fourth Amendment.  United States v. Karo, 468 U.S. 
705, 715, 104 S. Ct. 3296, 3303 (1984).
To 
justify a warrantless search, the State must show probable cause at the time of 
the search and the existence of exigent circumstances that made the procuring of 
a warrant impracticable.  McNairy 
v. State, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991); Beaver v. 
State, 106 S.W.3d 243, 246-47 (Tex. App.CHouston 
[1st Dist.] 2003, pet. ref=d).  A warrantless search may also be 
justified if it falls within a well-recognized exception to the warrant 
requirement.  Katz v. United 
States, 389 U.S. 347, 357, 88 S. Ct. 507 (1967); Best, 118 S.W.3d at 
862; see Walter v. State, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000) 
(recognizing Aplain 
view@ 
doctrine as such an exception); Davis v. United States, 328 U.S. 582, 
593, 66 S. Ct. 1256, 1261 (1946) (holding search with consent of suspect is an 
exception); Carmouche, 10 S.W.3d at 327 (applying Aplain 
feel@ 
exception, citing Minnesota v. Dickerson, 508 U.S. 366, 113 S. Ct. 2130 
(1993)); Westfall v. State, 10 S.W.3d 85, 88 (Tex. App.CEastland 
1999, no pet.) (applying Aopen 
fields@ 
exception recognized in Oliver v. United States, 466 U.S. 17, 19, 104 S. 
Ct. 1735, 1741-42 (1984)).

A 
Asearch@ 
does not occur for Fourth Amendment purposes even within the protected area of a 
house, unless the individual manifested a subjective expectation of privacy in 
the object of the challenged search and society is willing to recognize that 
expectation as reasonable.  Kyllo 
v. United States, 533 U.S. 27, 33, 121 S. Ct. 2038, 2042 (2001); Porter 
v. State, 93 S.W.3d 342, 346 (Tex. App.CHouston 
[14th Dist.] 2002, pet. ref=d) 
(op. on reh=g).  Absent orders from a person in 
possession of property not to trespass, anyone, including a police officer, has 
the right to approach the front door of a residence and knock on the door.  Cornealius v. State, 900 S.W.2d 
731, 733-34 (Tex. Crim. App. 1995).  

Under 
either Appellant=s 
or Officer Lanier=s 
version of the circumstances under which Officer Lanier approached the front 
door of Appellant=s 
house ostensibly to talk to Robert, Appellant expressed no objection.  He either verbally assented, according 
to Officer Lanier, or had no reason to say anything, according to 
Appellant.  Thus, Officer Lanier had 
a right to go back to the house after placing Appellant in the car to contact 
Robert about staying there or locking the door if he left.  Cornealius, 900 S.W.2d at 733-34; 
see Duhig v. State, No. 14‑03‑01076‑CR, 2005 WL 1979207, at *2 (Tex. 
App.CHouston 
[14th Dist.] August 16, 2005, no pet. h.).   

Once 
rightfully at the front door, Officer Lanier was free to observe  evidence in Aplain 
view.@  Walter, 28 S.W.3d at 541 (holding 
observation and even seizure of property in Aplain 
view@ 
involves no invasion of privacy); Swarb v. State, 125 S.W.3d 672, 680 
(Tex. App.CHouston 
[1st Dist.] 2003, pet. dism=d); 
Duhig, 2005 WL 1979207, at *3.  
What a person knowingly exposes to the public, even in his/her own home 
or office is not a search that falls within the protection of the Fourth 
Amendment.  Katz, 389 U.S. at 
351, 88 S. Ct. at 511.   

Evidence 
in the record supports an implicit finding that Officer Lanier=s 
actions prior to obtaining oral and written consent from Appellant did not 
constitute a search.  Officer Lanier 
testified that when he arrested Appellant and placed him in the back of the 
squad car, Appellant asked him to tell Robert, who was inside the house at that 
time, to lock up if he left.  
Officer Lanier further testified that the front door was open and he 
merely observed the glass pipe and razor blades on a table and the smell of 
ether through the screen door.  
These facts support a finding that Officer Lanier did not Asearch@ 
Appellant=s 
house before obtaining consent, but merely observed the evidence while 
delivering a message to Robert on Appellant=s 
request.  


Appellant 
urges us to consider that no one corroborated Officer Lanier=s 
testimony and that his testimony was expressly contradicted by both Appellant 
and Robert.  Additionally, while 
Detective Hanks testified that Officer Lanier told him when he arrived that he 
had seen the pipe and razor blades on the table through the front door screen, 
he also recalled Officer Lanier telling him that he was Amotioned@ 
into the room by someone, and that Officer Lanier had walked in and found the 
pipe inside the house.  But he 
agreed he was not there when Officer Lanier discovered the pipe.  All he knew was what he was told by 
Officer Lanier and he could be incorrect.  
He did not look through the screen door himself, but believed he recalled 
later seeing the pipe on the coffee table to the left of the couch when they 
went in after obtaining consent.  
Finally, we note the testimony of Officer Picah, a member of the North 
Texas Narcotics Task Force that searched the house later that night, 
acknowledging that his report stated that Officer Lanier was Awaved@ 
in by the subject on the couch, but that that information was also related to 
him by Hanks.  Officer Picah also 
recalled that the glass pipe was laying on the table in plain view when he saw 
it, and he did not think it would be difficult to view the pipe from outside on 
the porch.  


Given 
that it is the trial court=s 
duty, and not ours, to resolve the conflicts in the testimony, and with 
appropriate deference to the trial court=s 
implicit findings of credibility, we conclude that the evidence supports the 
trial court=s 
implied finding that Officer Lanier did not Asearch@ 
Appellant=s 
house prior to obtaining consent but, rather, saw the glass pipe and razor 
blades in Aplain 
view@ 
through the screen door.  Therefore, 
we further conclude that the trial court=s 
decision to deny the motion to suppress was correct on the theory that Officer 
Lanier=s 
actions were not an illegal search.  
Thus, we need not consider whether those actions tainted 
Appellant=s 
consent.  We overrule 
Appellant=s 
sole point on appeal.
                                           
CONCLUSION
Because 
we hold the trial court did not err by denying Appellant=s 
motion to suppress, we affirm the trial court=s 
judgment. 
 
 
ANNE 
GARDNER
JUSTICE
 
PANEL 
B:   LIVINGSTON, GARDNER, and 
WALKER, JJ.
 
DO 
NOT PUBLISH
Tex. 
R. App. P. 
47.2(b)
 
DELIVERED:  December 8, 
2005




[1]See 
Tex. 
R. App. P. 47.4.

[2]Miranda 
v. Arizona, 
384 U.S. 436, 86 S. Ct. 1602 (1966).