In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00183-CR


______________________________




STEVEN DEON JONES, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Sixth Judicial District Court


Lamar County, Texas


Trial Court No. 22653




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 On January 17, 2008, as part of a police operation to identify and arrest drug dealers, the
Paris Police Department obtained a room at the Kings Inn in Paris, Lamar County, Texas, and placed
a hidden camera inside. The police had James Lewis Liggins, a confidential informant, occupy the
room, and they planned to have him call drug dealers until one came to Liggins's room and sold him
drugs. When the telephone in Liggins's room did not work, he went to a local club, spoke with
Steven Deon Jones, and told him that Liggins "would need $200 worth of crack cocaine." Liggins,
Jones, and a third party met in Liggins's room at the Kings Inn, and Jones sold Liggins crack cocaine
for $200.00. Jones was arrested later and convicted of delivery of more than one gram but less than
four grams of cocaine, while within a drug-free zone, and sentenced to twenty years' in
imprisonment. (1)

 On appeal, Jones contends that (1) Section 481.112 rather than Section 481.134 of the Texas
Health and Safety Code is the proper statute of offense, and (2) the evidence is legally and factually
insufficient to prove the address of the playground. 

 We addressed Jones's points of error in detail in our opinion of this date on Jones's appeal
in cause number 06-08-00181-CR, and for the reasons stated therein, we 1) sustain Jones's first point
of error and reform the judgment to name "Section 481.112 of the Texas Health & Safety Code" as
the statute of offense, and 2) overrule his second and third points of error.

 

 As reformed, we affirm the judgment. 



 Bailey C. Moseley

 Justice


Date Submitted: September 14, 2009

Date Decided: October 22, 2009


Do Not Publish 



 


1. The amount of drugs in Jones's possession made the offense a second-degree felony. Tex.
Health & Safety Code Ann.§ 481.102 (Vernon Supp. 2008), § 481.112 (Vernon 2003).


al gate, a gate which barred access to
his property. He asserts that the presence of the sign at the gate to the entrance of his property
provided notice that the officers were not authorized to enter upon his property in order to conduct
a "knock and talk" interview. In other words, the presence of the sign at his gate moved the allowed
entry of the deputies for the purpose of a "knock and talk" back from the door of his house to the
gated entry onto his property. Accordingly, he characterizes the deputies' entrance onto his property
that day as a warrantless search which yielded evidence seized in violation of federal and state
constitutional rights. See U.S. Const. amend. IV; Tex. Const. art. I, § 9; see also Tex. Code Crim.
Proc. Ann. art. 38.23 (Vernon 2005) (providing that no evidence obtained in violation of state or
federal laws shall be admitted as evidence against the accused in any criminal case).

 In this situation, the deputies had received an anonymous tip that Harmon was in the process
of manufacturing methamphetamine on his property. They testified that they went to Harmon's
house on July 22, 2004, to knock on the door in order to talk with him about that information, but
that Harmon was not then present. While on the front porch to Harmon's mobile home, the deputies
saw a table saw upon which sat an apparatus consisting of two large jars connected by a tube; one
jar contained what appeared to be a bi-layered mixture of rock salt and muriatic acid. Deputy Lance
Hall testified that such an apparatus was "common" in the methamphetamine manufacturing process. 
The deputies also noticed an odor with which they were familiar, a smell commonly associated with
methamphetamine production. While Deputies Joe Langhennig and Joe Vasquez waited at the
property, Deputy Hall left to obtain a search warrant based on these facts. Harmon came to his
property while Langhennig and Vasquez were present, turned his vehicle around, and left. About
thirty minutes later, he returned. This time, when Deputies Langhennig and Vasquez attempted to
stop Harmon, Harmon accelerated in his truck toward the deputies, forcing them to fire their guns
at his vehicle. When Deputy Hall returned with the search warrant, the deputies entered the
residence and seized a variety of ingredients, precursors, and solutions necessary to the manufacture
of methamphetamine. 

 We first determine whether the deputies were lawfully on Harmon's property on the day in
question. A "knock-and-talk" procedure begins with police knocking at a suspect's door; when the
suspect answers, the police identify themselves as police officers and explain to the person that the
interviewee is a suspect in a narcotics investigation. See Gale v. State, 998 S.W.2d 221, 223 n.2
(Tex. Crim. App. 1999). The officers then advise the suspect of his constitutional rights and ask the
suspect for consent to search his residence and/or further discuss the allegations against him. See
id. Absent an express order from a person in possession of property not to trespass, (1) the police are
not prevented from approaching and knocking upon the front door of a residence for the purpose of
asking questions of the occupant. See Cornealius v. State, 900 S.W.2d 731, 733-34 (Tex. Crim.
App. 1995); Duhig v. State, 171 S.W.3d 631, 635 (Tex. App.--Houston [14th Dist.] 2005, pet. ref'd);
Nored v. State, 875 S.W.2d 392, 396-97 (Tex. App.--Dallas 1994, pet. ref'd).

 Here, the trial court heard directly conflicting evidence on whether there was a sign
prohibiting entrance onto Harmon's property. Harmon produced pictures of a "No Trespassing" sign
attached to the fence in front of the road or drive leading onto Harmon's property. Harmon's mother
testified that the gate and sign had been posted there since 2003 and, therefore, was present on
July 22, 2004. Harmon's neighbor, Arvis Hines, also testified that the gate was there prior to July 22,
2004, and that the "No Trespassing" sign was in existence at the gated entrance on that day. In
contrast to this evidence, each of the three deputies who went to conduct a "knock and talk" testified
that there was no such sign posted at the entrance on the day in question. 

 Whether the sign was present on July 22, 2004, is an issue of historical fact, the resolution
of which we afford almost total deference to the trial court. The trial court did not abuse its
discretion by the factual finding in the face of conflicting evidence that there were no express orders
(such as a "no trespassing" sign) prohibiting entry onto Harmon's property on July 22, 2004. 
Applying the law to these facts, we conclude that nothing prohibited the deputies from entering onto
Harmon's property to conduct a "knock and talk." On this record, the deputies' entry onto Harmon's
property (which put them into the physical proximity of the house, enabling them to make
observations) did not constitute an illegal search. We overrule Harmon's contention to the contrary.

III. Observation of Items in Plain View

 Having found that the deputies were not prohibited from entering Harmon's property, we now
turn to Harmon's arguments regarding Deputy Hall's observations recited in his affidavit in support
of the search warrant. To this, the State replies that the deputies were in a lawful position and could
use the evidence in plain view as a basis for the search warrant.

 We begin by noting that "[a]n officer's entry onto the curtilage or approach to the entrances
of a residence does not necessarily rise to the level of a search as contemplated by the Fourth
Amendment." Rodgers v. State, 162 S.W.3d 698, 709 (Tex. App.--Texarkana 2005), aff'd, 205
S.W.3d 525 (Tex. Crim. App. 2006). For instance, the observation of property in plain view
involves no invasion of privacy. See Walter v. State, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000);
Duhig, 171 S.W.3d at 636. "Because entry is impliedly authorized, there exists no reasonable
expectation with regard to things observed by those on the pathway to the house." Washington v.
State, 152 S.W.3d 209, 214 (Tex. App.--Amarillo 2004, no pet.) (citing Bower v. State, 769 S.W.2d
887, 897 (Tex. Crim. App.1989), overruled on other grounds by Heitman v. State, 815 S.W.2d 681
(Tex. Crim. App. 1991)).

 In order for the plain view doctrine to apply, first, the officer must make the initial intrusion
lawfully or otherwise properly be in a position from which he can view the contraband. Walter, 28
S.W.3d at 541; Keehn v. State, No. 02-06-00047-CR, 2007 Tex. App. LEXIS 310, at *9-10 (Tex.
App.--Fort Worth Jan. 18, 2007, no pet. h.). Next, it must be "immediately apparent" to the officer
that the items observed may be evidence of a crime, contraband, or otherwise subject to seizure. 
Walter, 28 S.W.3d at 541; Keehn, 2007 Tex. App. LEXIS 310, at *12. That is, there must be
probable cause to associate the item with criminal activity. Walter, 28 S.W.3d at 541; Ramos v.
State, 934 S.W.2d 358, 365 (Tex. Crim. App. 1996).

 Since, as we have concluded, the evidence before the trial court supports its finding that the
deputies did not illegally enter Harmon's property, the deputies stood in a lawful vantage point. 
Further, Deputy Hall testified that, based on his years of experience and advanced training in the
investigation of the manufacture of methamphetamine, he recognized the two-jar apparatus and its
bi-layered contents as common elements of a methamphetamine laboratory, opining further that the
apparatus and contents could serve no other legitimate purpose. He also testified that he recognized
the chemical smell on the premises as that associated with the manufacture of methamphetamine. 
The record supports the finding that, from the deputies' lawful positions on the front porch, it was
immediately apparent that the two-jar apparatus was associated with criminal activity. (2) 

 On similar facts, our sister courts have likewise held that the plain view doctrine applied. 
Keehn, 2007 Tex. App. LEXIS 310, at *1. In Keehn, the Fort Worth court upheld the trial court's
denial of a motion to suppress based on a similar application of the plain view doctrine to the issue
of the reasonableness of the warrantless seizure of a tank containing anhydrous ammonia. See id.
at *16. As an officer approached the front door of Keehn's house to conduct a "knock and talk," the
officer noticed a propane tank with bluish-green discoloration near its valve in plain view in the back
of a van parked on the property. See id. at *1. The Fort Worth court concluded that the evidence
showed the officer to be in a lawful position and also showed that, since the officer immediately
believed the propane tank to be associated with criminal activity, the plain view doctrine applied. 

 Similarly, in Duhig, the Fourteenth District Court of Appeals affirmed the trial court's denial
of a motion to suppress by relying on the application of the plain view doctrine. Duhig was
convicted of possession of methamphetamine with the intent to deliver. Duhig, 171 S.W.3d at 633. 
At issue in Duhig was the seizure of evidence pursuant to a warrant based on the officer's affidavit
outlining his observation of drug-related evidence from the front and back of Duhig's house. Id. at
634.

 In much the same way as the deputies here, the deputies in Duhig went to the house to
conduct a "knock and talk" regarding information received by them that there were narcotics at the
house. See id. at 633. After knocking on the door several times, one of the deputies stood on his
tiptoes to look through the window on the front door and saw a digital scale, a bong or hookah, and
what appeared to be marihuana. See id. After no one answered the repeated knocks at the front
door, the deputies decided to go to the back of the house (3) where the deputy saw, through a partially-open glass patio door, a clearer view of the drug-related evidence and, through a broken, partially-covered window, also saw a marihuana-growing laboratory. See id. at 633-34. The deputy also
smelled marihuana coming from an air conditioning unit. See id. at 634. Since the deputy was in
a lawful position when he made the observations and since it was immediately apparent to him that
the items observed were involved in criminal activity, the plain view doctrine applied. Id. at 638. 
Therefore, his observations were not searches within the meaning of the Fourth Amendment and the
trial court did not err by denying suppression of the evidence seized pursuant to the search warrant
supported by these observations. See id. at 639.

 The record in this matter supports the finding that the deputies were not prohibited from
entering Harmon's property. Their entry onto the front porch and their observation from that place
of items in plain view and with which the deputies immediately associated criminal activity did not
constitute a search as contemplated by the Fourth Amendment. That said, the observations made
while on the front porch were not fruits of an illegal search and could serve as the basis of a search
warrant. (4) We overrule Harmon's contentions.

 We affirm the trial court's judgment.



 Bailey C. Moseley

 Justice


Date Submitted: March 27, 2007

Date Decided: May 18, 2007


Do Not Publish

1. A person commits a criminal trespass if he enters or remains on property of another without
effective consent and he had notice that the entry was forbidden or received notice to depart but
failed to do so. Tex. Penal Code Ann. § 30.05(a) (Vernon Supp. 2006). A sign posted on the
property that is reasonably likely to come to the attention of intruders and that indicates that entry
is forbidden constitutes notice. Tex. Penal Code Ann. § 30.05(b)(2)(C) (Vernon Supp. 2006).
2. To the extent Harmon's contention raises the issue of whether the items were in plain view,
we note that Deputy Hall testified that the two connected jars were visible from the porch and that
the smell was blown toward them from a fan acting as a sort of exhaust, blowing air from inside the
house outside the window onto the front porch. Deputy Hall testified that the table saw and jars were
less than ten feet away to the left of the porch and were visible from the porch. Harmon's cross-examination of the deputies suggested that the table saw on which the two tanks were sitting was
behind the mobile home and that the officers would have been forced to leave the porch and walk
around to its rear to have seen it. The deputies denied this. This is a matter on which again we
afford deference to the trial court's finding of fact. It had before it both testimonial and photographic
evidence that the methamphetamine production tanks were visible from the porch.
3. The evidence was disputed on whether there was a fence blocking access to the side and
backyard. See Duhig, 171 S.W.3d at 638. The Fourteenth District Court of Appeals gave deference
to the trial court's determination that there were no fences restricting access to the backyard. See id. 
The court also concluded that the record supported the finding that there were no signs or any other
directives prohibiting the deputies from going to the back. See id. at 636. Under proper
circumstances, the law will allow officers conducting a "knock and talk" to approach the back of the
house after first attempting to contact an occupant at the front door. See id. at 637 (citing Gonzalez
v. State, 588 S.W.2d 355, 357-60 (Tex. Crim. App. 1979); Long v. State, 532 S.W.2d 591, 593-95
(Tex. Crim. App. 1975); Watts v. State, 56 S.W.3d 694, 700-01 (Tex. App.--Houston [14th Dist.]
2001, rev'd on other grounds, 99 S.W.3d 604 (Tex. Crim. App. 2003)); see also Buchanan v. State,
129 S.W.3d 767, 772 (Tex. App.--Amarillo 2004, pet. ref'd). Once again, we give deference to the
trial court to determine this factual dispute.
4. We emphasize that Harmon does not challenge the sufficiency of the affidavit using these
observations in support of the issuance of the search warrant and, therefore, we do not address the
issues raised in Davis v. State, 202 S.W.3d 149 (Tex. Crim. App. 2006). Again, Harmon argues that
the deputies illegally searched his property and that their observations were fruit of the poisonous
tree and, therefore, could not serve as the basis for the search warrant.