

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-20-00309-CR

---

MELISSA ANN CAFFEY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 207th District Court
Hays County, Texas[1]
Trial Court No. CR-19-1525-B, Honorable Jack Robison, Presiding

---

February 11, 2022

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, Melissa Caffey, appeals a plea-bargained judgment convicting her of one count of endangering a child and five counts of cruelty to animals. While the judgment

---

[1] Pursuant to the Texas Supreme Court's docket equalization efforts, this case was transferred to this Court from the Third Court of Appeals. *See* TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between precedent of the Third Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

complies with the terms of the plea agreement, appellant raised issues by written motion filed and ruled on before trial. We affirm the trial court's judgment.

## Factual and Procedural Background

On October 30, 2018, Hays County Sheriff's Deputy Brian Wahlert received an email complaining about a strong smell of cat urine emanating from a residence in Buda, Texas. The complaint expressed concern about the welfare of the animals kept on the property. In response to the email, Wahlert and Hays County Animal Control Officer Andrew Warnica visited the residence. Upon exiting the vehicle, Wahlert smelled an odor that, from his prior experience, smelled like a dead human body. Wahlert and Warnica walked up a portion of the residence's driveway and along a sidewalk leading to the front door. Wahlert knocked on the door twice and waited approximately one minute, but nobody answered the door. At this point, Wahlert and Warnica went back to the driveway and followed it to an opening in the privacy fence around the back yard. They walked through the fence opening to a metal gate over which Wahlert saw a cage containing about fifteen kittens that were covered in feces. He also saw two dogs, one of which appeared to have mange. After determining that the smell was coming from the animals, Warnica took photographs of the condition of the animals from the gate. Wahlert and Warnica then left the property.

Wahlert determined that appellant resided at the residence. He was able to speak to appellant by telephone on October 30, 2018. Appellant stated that she was out of town on vacation and would not be back until the following week. Appellant did not deny Wahlert access to the residence but did indicate that she would not be comfortable with

2

police or animal control contacting the person who was tending to the animals while appellant was away. Wahlert informed appellant that he could not wait for a week to address the situation.

On November 1, Warnica and Corporal John Trinidad returned to appellant's residence. They walked directly to the front door, knocked twice, but no one answered. Warnica and Trinidad proceeded up the driveway toward the backyard. They encountered appellant's husband, Thomas Caffey, on the driveway. Warnica asked Thomas if they could see the animals. Thomas consented and led Warnica and Trinidad to the gate from which Warnica had taken pictures on October 30. Appellant was standing on the other side of the gate when Warnica and Trinidad approached. Because Warnica could no longer see the kittens he had seen on October 30, he asked appellant if he could see those kittens. Without verbally responding, appellant turned back toward the yard. Warnica unlatched the gate and followed appellant. Appellant then proceeded to guide Warnica around the property showing him the animals he requested to see. After observing the condition of the animals, Warnica and Trinidad left the property to obtain an animal seizure warrant. After they obtained a warrant, law enforcement officers seized 161 cats and fifteen dogs from the property.

As a result of the foregoing, appellant was indicted for two counts of endangering a child and ten counts of cruelty to animals. Prior to trial, appellant filed a motion to suppress evidence obtained as a result of the October 30 and November 1 searches of her residence. After holding two hearings on the motion, the trial court denied the same. Following this ruling, appellant and the State reached a plea bargain agreement whereby she would plead guilty and the State would dismiss one count of endangering a child and

3

five counts of cruelty to animals.  The trial court accepted the plea bargain agreement and entered judgment.  Upon appellant's request, the trial court entered findings of fact and conclusions of law.  Appellant timely appealed the denial of her motion to suppress. *See* TEX. R. APP. P. 25.2(a)(2)(A).

By her appeal, appellant does not explicitly identify any issues presented. However, her argument seems to advance a sole issue challenging the trial court's denial of her motion to suppress.

Standard of Review

The denial of a motion to suppress is reviewed for an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008).  We conduct our review using a bifurcated standard: we give almost total deference to the trial court's express or implied determination of historical facts while reviewing the court's application of the law to those facts de novo.  *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007).  The evidence is to be viewed in the light most favorable to the trial court's ruling.  *Id.* at 24. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony.  *Id.* at 24-25.  The trial court may choose to believe or disbelieve any part or all of a witness's testimony.  *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996).

Where a trial court files findings of fact and conclusions of law, the reviewing court considers all the evidence in the record and must determine whether the evidence supports the facts found by the trial court by viewing the evidence in favor of the trial court's ruling.  *State v. Daniel*, 446 S.W.3d 809, 812 (Tex. App.—San Antonio 2014, no

4

pet.).  The same deference is afforded to mixed questions of law and fact when the resolution of those issues turns on an evaluation of credibility and demeanor.  *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009).

When determining whether probable cause existed, a reviewing court considers the totality of the circumstances.  *Wiede*, 214 S.W.3d at 25.  The subjective intent or motivation of law enforcement is not taken into account when considering the totality of the circumstances.  *Id.*  However, the training, knowledge, and experience of law enforcement officers is taken into consideration.  *Id.*

Analysis

To determine the propriety of the actions taken by law enforcement in this case, we must go through each of the encounters to determine whether law enforcement's actions were proper in gathering the evidence challenged by appellant's motion to suppress.

October 30, 2018

Initially, we will analyze the actions taken by Wahlert and Warnica on October 30, 2018.  Upon arriving at the residence, Wahlert immediately smelled an odor that he had only smelled a few times before and always in relation to the discovery of dead bodies.  Walhert and Warnica followed the walkway to the residence's front door where they knocked but received no answer.  Having no success making contact at the front door, Walhert and Warnica proceeded down the driveway toward the back door.  At the end of the driveway, they saw a fence opening that allowed a view into the back yard of the residence.  Upon arriving at this fence opening, Walhert could see a cage containing

5

about fifteen kittens and two litter boxes with about three inches of urine and feces inside. Warnica reported that all the cats were dirty and covered in feces. He also saw two dogs inside the yard and one of the dogs appeared to have mange. Without entering the fenced area, Warnica photographed the condition of the animals that were within view.

"Law enforcement officers are not required to shield their eyes when passing by the home on public throughfares, but their ability to gather information is sharply circumscribed when they leave the public throughfares and enter constitutionally protected areas." *Sayers v. State*, 433 S.W.3d 667, 674 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (op. on reh'g) (internal quotation marks omitted) (citing *Florida v. Jardines*, 569 U.S. 1, 7, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013)). When evidence is obtained in constitutionally protected areas, we must determine whether the evidence was obtained as a result of an unlawful intrusion onto the property. *Id.* Law enforcement officers, like members of the public, have an implied license to approach a home via the front walkway and knock on the front door. *Id.* "This implied license granting permission to police officers to enter onto the curtilage to contact the resident exists so long as the resident has not manifested an intent to restrict access to his home, such as by locking a gate or posting signs indicating that the officer is not invited, and the officer 'does not deviate from the normal path of traffic' to the front or back door of the house." *Id.* at 675 (quoting *Washington v. State*, 152 S.W.3d 209, 215 (Tex. App.—Amarillo 2004, no pet.)). Furthermore, it is permissible for an officer to approach the back door of a home after having first tried the front door and received no answer. *Duhig v. State*, 171 S.W.3d 631, 637-38 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (citing *Gonzalez v. State*, 588 S.W.2d 355, 357-60 (Tex. Crim. App. 1979), *Long v. State*, 532 S.W.2d 591, 593-95 (Tex.

6

Crim. App. 1975), and *Watts v. State*, 56 S.W.3d 694, 700-01 (Tex. App.—Houston [14th Dist.] 2001), *rev'd on other grounds*, 99 S.W.3d 604 (Tex. Crim. App. 2003)). Law enforcement officers may seize evidence in plain view, provided they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made. *Sayers*, 433 S.W.3d at 675 (citing *Kentucky v. King*, 563 U.S. 452, 462-63, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011)).

Here, Walhert and Warnica properly proceeded to the front door and sought contact with appellant by knocking on the front door. *See id.* at 674. When nobody answered their knock, they legally approached the back door of the home. *See Duhig*, 171 S.W.3d at 637-38. At a fence opening, Walhert and Warnica were able to plainly see that animals were being housed in unsanitary conditions within the back yard. *See Sayers*, 433 S.W.3d at 675. At this point, it is likely that Walhert and Warnica had probable cause to believe that the crime of cruelty to animals was being committed which would have justified them entering the back yard and seizing the animals. *Id.* However, Warnica photographed the condition of the animals without entering the back yard. After documenting the scene, Walhert and Warnica returned to their vehicles and left. We conclude that the observations made by Walhert and Warnica on October 30 were legally obtained.

Later on October 30, Wahlert contacted appellant by phone. Appellant inquired about animal control visiting her residence. She confirmed that she was in Rockport, Texas, and planned on returning the following week. Walhert informed appellant that he would need to see the animals before then. Appellant did not express any intent to restrict law enforcement from accessing her home.

7

<u>November 1, 2018</u>

Two days later, on November 1, Warnica called appellant. Warnica informed appellant that he needed to see the animals immediately. Appellant indicated that the person caring for the animals while appellant was away would not feel comfortable having somebody come to the residence since it is not her house. However, appellant did not expressly forbid Warnica from going to her residence to check on the animals.

Later on November 1, Warnica and Corporal Trinidad returned to appellant's residence. After again attempting to make contact by knocking on the front door but receiving no answer, Warnica and Trinidad proceeded up the driveway where they encountered appellant's husband, Thomas Caffey. Warnica asked to see the animals and Thomas led the officers to the back gate where Warnica had previously photographed the animals. Appellant was standing on the other side of the gate when the officers approached. Warnica asked appellant if he could see the kittens that he had seen on October 30. Appellant turned to retrieve one of the kittens and Warnica followed her. Appellant then led Warnica throughout the property showing him the animals. Based on his observation of the condition of the animals, Warnica left the residence to obtain an animal seizure warrant. Pursuant to the warrant, law enforcement seized 161 cats and fifteen dogs.

"Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause." *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). The State bears the burden to prove voluntary consent by clear and convincing evidence. *Id.* Whether consent is voluntary is a question of fact

8

that is determined by the totality of the circumstances. *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). "A person's consent to search can be communicated to law enforcement in a variety of ways, including by words, action, or circumstantial evidence showing implied consent." *Id.* The key issue in assessing the voluntariness of consent is whether the individual's will has been overborne and his capacity for self-determination critically impaired. *Uriel-Ramirez v. State*, 385 S.W.3d 687, 692 (Tex. App.—El Paso 2012, no pet.).

As above, Warnica and Trinidad had implied license to approach the front door and knock. *See Sayers*, 433 S.W.3d at 674. Because they did not receive a response, they were justified in proceeding down the driveway to obtain access to the back door. *See Duhig*, 171 S.W.3d at 637-38. When they encountered Thomas Caffey, Warnica asked to look at the animals and Thomas led the officers to the back gate. Nothing about Warnica's interaction with Thomas suggests that Thomas's will was overborne or that his capacity for self-determination was critically impaired. *See Uriel-Ramirez*, 385 S.W.3d at 692. Rather, the evidence establishes that Warnica simply asked Thomas if he could see the animals. Upon arriving at the back gate, Warnica encountered appellant. Warnica asked appellant if he could see the kittens that he had seen on October 30. Appellant then turned and led Warnica on a tour of the property. *See Meekins*, 340 S.W.3d at 458. It is noteworthy that in response to multiple requests to see various animals, appellant repeatedly led Warnica throughout the property showing him the animals. She never expressed any objection to his presence on her property. *Sayers*, 433 S.W.3d at 675. Finally, Warnica did not act in such a manner that appellant's consent was simply an "acquiescence to a claim of lawful authority." *See Bumper v. North Carolina,* 391 U.S.

9

543, 548-49, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968). Thus, we conclude that the actions of Warnica and Trinidad on November 1 were legal and that appellant granted Warnica voluntary consent to search her property.

Appellant argues that because the initial entry upon the curtilage of the residence was unlawful, the State must prove by clear and convincing evidence that the taint of the illegal entry had dissipated by the time consent was given. *See Brick v. State*, 738 S.W.2d 676, 680-81 (Tex. Crim. App. 1987). However, we have previously determined that the initial entry upon the curtilage of the residence was not illegal. Thus, the additional requirements of *Brick* do not apply here. *See id.*

After viewing the animals at the residence on November 1, Warnica left the property to obtain a search warrant. After obtaining the warrant, law enforcement officers seized 161 cats and fifteen dogs from the property. Appellant challenges the sufficiency of the warrant as conclusory. Assuming, without deciding, that the warrant was invalid, the record does not reflect that appellant was harmed by the warrant. As discussed above, the evidence regarding the conditions in which the animals were kept had already been lawfully obtained by Warnica based on his October 30 plain-view observations and his November 1 consent search. At most, the execution of the warrant allowed law enforcement to ascribe a precise number of animals found on the property, but it did not provide any material evidence that had not already been lawfully obtained by Warnica. As such, we conclude that appellant was not harmed by the execution of the warrant in this case.

Conclusion

For the foregoing reasons, we overrule appellant's sole appellate issue and affirm the judgment of the trial court.

Judy C. Parker
Justice

Do not publish.