In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00232-CR


______________________________




JAMES LEE TILLEY, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 402nd Judicial District Court


Wood County, Texas


Trial Court No. 19,151-2005 




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 James Lee Tilley has appealed from his conviction by a jury for possession of more than one
gram and less than four grams of methamphetamine; the jury then found the enhancements to be true
and assessed a sentence of five years' confinement in the Institutional Division of the Texas
Department of Criminal Justice and assessed a fine of $10,000.00. On appeal, Tilley argues that the
trial court erred by refusing to submit an instruction to the jury concerning the legality of one of the
searches conducted by the police. 

Factual Background

 On a less than perfect evening for his fate, Tilley had found himself unable to obtain entry
into his Ford Taurus and was attempting to use screwdrivers and a yardstick to open the door. The
Taurus was parked next to a cluster of buildings owned or leased by Tilley. One of the buildings
contained a muffler shop on the ground level and Tilley resided in an apartment located on the
second floor of the shop building. A black four-door 1981 Ford pickup truck was located on the
premises, parked beside the Taurus. At about dusk, while Tilley was engaged in attempting to open
the door of the Taurus, he was observed by Mineola police officer Brandon Burton, who stopped to
check out Tilley's reason for attempting to force the car door open. 

 Officer Burton obtained identification information from Tilley and returned to his car to
request the police dispatcher to confirm the ownership of the vehicle and to determine if there were
any outstanding warrants for Tilley. As Officer Burton waited in the patrol car for a response, he
observed Tilley move from the spot Burton said that he had asked Tilley to stand, (1) walk to the rear
door of the four-door pickup truck, apparently toss something inside, and shut the door. Officer
Burton testified he could not see what Tilley had put in the truck. 

 Officer Burton proceeded to the pickup truck and, peering through the window and using his
flashlight, observed a glass methamphetamine pipe situated on the rear floorboard. Upon seeing the
methamphetamine pipe, Officer Burton opened the rear door of the truck and removed the pipe and
a canister (found to contain a residue of methamphetamine) on the floorboard beside it. Officer
Burton then placed Tilley under arrest; while making a cursory pat-down search of Tilley for
weaponry, Tilley discovered a plastic bag containing methamphetamine located in Tilley's shirt
pocket. 

 Tilley testified that he had opened the door of the truck to retrieve a pack of cigarettes he had
left on the back seat earlier in the day and that he had not placed anything in the truck while Burton
was observing him. Further in his testimony, he maintained that the windows of the truck were
covered with a type of tinting referred to as "limo" tint which is a "higher grade than any 10 percent"
and that it was not possible to see through the window. Tilley denied that the drugs, the
methamphetamine pipe, or the canister belonged to him. According to Tilley, the methamphetamine
found in his shirt pocket had been planted there by Burton. 

 Upon Tilley's request, a suppression hearing was conducted, during which Tilley maintained
that the initial search of the truck was unreasonable; no mention was made at this suppression
hearing regarding the tinting on the windows. The trial court denied the motion to suppress. 

 During the charge conference, Tilley requested that the charge "include a 38.23 instruction." 
Tilley argued that there was a factual dispute concerning whether the methamphetamine pipe was
in plain view of Burton. Given the "color of the glass, the color of the interior, . . ." and the dispute
over whether the officer used his flashlight, Tilley claimed there was a factual dispute over whether
the officer could have seen the pipe through the window. Tilley argued that the pat-down search was
"fruit of the poisonous tree" (i.e., the pat-down search would not have been possible unless Burton
had been arresting him for possession of the drug paraphernalia). The trial court refused to provide
an instruction based on Article 38.23. See Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005). 
The charge submitted to the jury did not contain an instruction on the legality of the search. 

Tilley had Standing to Contest the Search of the Truck

 The State cites Kleasen v. State, 560 S.W.2d 938 (Tex. Crim. App. 1977), for the proposition
that Tilley lacked standing to challenge the search of the truck because he denied ownership of the
seized items. (2) In Kleasen, the Texas Court of Criminal Appeals, citing Jones v. United States, 362
U.S. 257 (1960), held a "defendant can show that he has the requisite standing to contest the search
in three ways; he may show that he was lawfully on the premises at the time of the search; he may
show that his possession of the seized objects is itself an essential element of the offense with which
he is charged; he may show a proprietary or possessory interest in the premises searched or the items
seized." Id. at 941. 

 However, since Kleasen was decided, the United States Supreme Court has dispensed with
the "rubric of standing used in Jones." See Rakas v. Illinois, 439 U.S. 128, 140 (1978). The current
standard for whether a defendant has standing to contest a search under the Fourth Amendment is
whether the defendant had a reasonable expectation of privacy. Although "more properly placed
within the purview of substantive Fourth Amendment law than within that of standing," a defendant
has "standing" to assert a claim challenging the admission of evidence obtained by a governmental
intrusion only if he had a legitimate expectation of privacy in the place invaded. Rakas, 439 U.S.
at 140-43; see Richardson v. State, 865 S.W.2d 944, 948-49 (Tex. Crim. App. 1993); Granados v.
State, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002). The defendant in a possessory offense no longer
has "automatic" standing and must prove he had as reasonable an expectation of privacy as any other
defendant. See United States v. Salvucci, 448 U.S. 83, 92 (1980). "While property ownership is
clearly a factor to be considered in determining whether an individual's Fourth Amendment rights
have been violated . . . property rights are neither the beginning nor the end" of the inquiry. Salvucci,
448 U.S. at 91 (citations omitted). 

 We disagree with the State that Tilley lacks standing because he denied ownership of the
items seized. Whether a defendant asserts an ownership interest in the item seized may be relevant
to a challenge of the seizure itself, but as long as the defendant can show a reasonable expectation
of privacy in the area searched, a denial of ownership of the seized items does not defeat standing. 
Chapa v. State, 729 S.W.2d 723, 725 n.1 (Tex. Crim. App. 1987). Thus, the fact that Tilley denied
ownership of the seized items does not deprive him of standing, provided that he can establish a
reasonable expectation of privacy.

 The defendant has the burden of proving a legitimate expectation of privacy. Villarreal v.
State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); see Handy v. State, 189 S.W.3d 296, 299 & n.2
(Tex. Crim. App. 2006) (disavowing holding in Russell v. State, 717 S.W.2d 7, 9 n.6 (Tex. Crim.
App. 1986) (that "[a] mere allegation by a defendant that he was a victim of an illegal search or
seizure, if not disputed by the State, is sufficient to establish standing to challenge a search or
seizure")). "Whether a defendant has standing to contest a search and seizure is a question of law
which we will review de novo." Parker v. State, 182 S.W.3d 923, 925 (Tex. Crim. App. 2006). 

 Because standing is an element of a Fourth Amendment claim, the State may raise the issue
of standing for the first time on appeal, even when the defendant is the prevailing party in the trial
court. Kothe v. State, 152 S.W.3d 54, 60 (Tex. Crim. App. 2004); State v. Klima, 934 S.W.2d 109,
110-11 (Tex. Crim. App. 1996). Further, an appellate court "may raise the issue of standing on its
own; it may analyze that issue as a part of the Fourth Amendment claim presented; or it may
conclude that the State has forfeited that argument because it failed to raise it in the trial court." (3) 
Kothe, 152 S.W.3d at 60 (footnotes omitted) (citations omitted). Although the State did raise the
issue of standing, the State has not argued that Tilley lacked a reasonable expectation of privacy in
the truck. We will, nevertheless, address whether Tilley established a reasonable expectation of
privacy.

 Whether a defendant has a reasonable expectation of privacy is determined by a two-pronged
test. Parker, 182 S.W.3d at 925; see Smith v. Maryland, 442 U.S. 735 (1979). "First, we ask
whether the defendant had a subjective expectation of privacy in the place searched. If the answer
is yes, then we ask whether the defendant's expectation of privacy is one that society recognizes as
reasonable or justifiable under the circumstances." Parker, 182 S.W.3d at 926. 

 Under the second prong, we must determine whether the accused's subjective expectation was
one that society was prepared to recognize as objectively reasonable. In making this determination,
courts often examine the following factors: (1) whether the accused had a property or possessory
interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he
had complete dominion or control and the right to exclude others; (4) whether, before the intrusion,
he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place
to some private use; and (6) whether his claim of privacy is consistent with historical notions of
privacy. Villarreal, 935 S.W.2d at 138.

 In this case, Tilley had--at a minimum--a possessory interest in the truck in which the
methamphetamine pipe was located. (4) Tilley testified that he had sold the truck but that the title had
not yet been transferred to the purchaser. The truck had broken down and the son of the purchaser
had brought it back to Tilley for repairs. At the time of the events in question, the truck was not
operating. Further, the truck was located on the curtilage of Tilley's residence. (5) Under the facts of
this case, we conclude Tilley had standing to challenge a search of an inoperable truck in his
possession and parked on the curtilage of his property. Such an expectation of privacy is the kind
of privacy expectation that society recognizes as reasonable. If the jury had chosen not to believe
Officer Burton's version of events, (6) Tilley established a reasonable expectation of privacy.

The Trial Court Erred in Refusing the Requested Instruction

 Tilley contends the trial court erred in denying the requested instruction because there was
a fact issue concerning 1) whether Officer Burton had reasonable suspicion to extend the encounter (7)
and 2) whether Officer Burton could see the drug paraphernalia through the tinted windows of the
truck. Tilley claims the drug paraphernalia was not in plain view because the tint of the windows
on the truck prevented observation of the interior. 

 The defendant alleging a Fourth Amendment violation bears the burden of producing some
evidence that rebuts the presumption of proper police conduct. Amador v. State, 221 S.W.3d 666,
672 (Tex. Crim. App. 2007). "A defendant meets his initial burden of proof by establishing that a
search or seizure occurred without a warrant." (8) Id. The burden then shifts to the State to prove that
the search or seizure was nonetheless reasonable under the totality of the circumstances. Id. at
672-73.

 Because the drug paraphernalia was in "plain view," the State argues there was no Fourth
Amendment violation. "What a person knowingly exposes to the public, even in his own home, is
not a search subject to Fourth Amendment protection." Duhig v. State, 171 S.W.3d 631, 636 (Tex.
App.--Houston [14th Dist.] 2005, pet. ref'd). If the property is in ''plain view,'' it may be seized
without a warrant provided the officer had a legitimate reason to be where he was and the officer had
probable cause to believe that the object was contraband or evidence of a crime. Coolidge, 403 U.S.
at 468-72; see Colorado v. Bannister, 449 U.S. 1, 3 (1980). If an article is already in plain view,
neither its observation nor its seizure would involve any invasion of privacy. Walter v. State, 28
S.W.3d 538, 541 (Tex. Crim. App. 2000); see Rawlings v. Kentucky, 448 U.S. 98, 106 (1980).

 The fact that the officer intentionally looked into the truck or was forced to use a flashlight
as a visual aid to see through the tinted glass does not affect the application of the plain view
doctrine. The Fourth Amendment does not require the discovery of evidence to be inadvertent. 
Horton, 496 U.S. at 140. A vision enhancement device such as a flashlight also does not affect the
application of the plain view doctrine. Texas v. Brown, 460 U.S. 730, 740 (1983) ("the use of
artificial means to illuminate a darkened area simply does not constitute a search"); Duhig, 171
S.W.3d at 637. 

 The Texas Code of Criminal Procedure requires a jury instruction if the evidence raises an
issue concerning whether evidence is the result of an unlawful search. Article 38.23(a) provides:

 No evidence obtained by an officer or other person in violation of any provisions of
the Constitution or laws of the State of Texas, or of the Constitution or laws of the
United States of America, shall be admitted in evidence against the accused on the
trial of any criminal case.


 In any case where the legal evidence raises an issue hereunder, the jury shall
be instructed that if it believes, or has a reasonable doubt, that the evidence was
obtained in violation of the provisions of this Article, then and in such event, the jury
shall disregard any such evidence so obtained.


Tex. Code Crim. Proc. Ann. art. 38.23. An instruction pursuant to Article 38.23 is mandatory
when there is a factual dispute regarding the legality of the search. Brooks v. State, 642 S.W.2d 791,
799 (Tex. Crim. App. [Panel Op.] 1982); Malone v. State, 163 S.W.3d 785, 802 (Tex.
App.--Texarkana 2005, pet. ref'd); Howes v. State, 120 S.W.3d 903, 907 (Tex. App.--Texarkana
2003, pet. ref'd). A fact issue existed here; Officer Burton testified that he had seen the pipe through
the window of the truck and that the pipe was, thus, in plain view; Tilley said that Burton could not
have seen the pipe through the window because of the tinting on the window which prevented such
a viewing. If Burton simply opened the door of the truck without first having seen the
methamphetamine pipe in the back floorboard, it could have been an illegal search. 

 The State argues that the facts leading up to the seizure of the contraband are not in dispute
and that the only disputed issue was whether Officer Burton planted the contraband in the truck. 
There was a factual dispute concerning whether Officer Burton could see through the tinted window
of the truck. Tilley testified the truck was equipped with a type of tinting referred to as "limo" tint
which is a "higher grade than any 10 percent" and cannot be seen through. If the jury had chosen to
believe Tilley's testimony, the jury may have concluded Officer Burton did not see the pipe through
the tinted windows. If Officer Burton could not see through the tinted windows, the plain view
doctrine is inapplicable. When "a defendant raises a factual dispute about whether evidence was
illegally obtained, an Article 38.23 instruction must be included in the jury charge." Pickens v. State,
165 S.W.3d 675, 680 (Tex. Crim. App. 2005). As it pertains to a request for an instruction under
Tex. Code Crim. Proc. Ann. art. 38.23, "A fact issue about whether evidence was legally obtained
may be raised 'from any source, and the evidence may be strong, weak, contradicted, unimpeached,
or unbelievable.'" Garza v. State, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004) (quoting Wilkerson
v. State, 933 S.W.2d 276, 280 (Tex. App.--Houston [1st Dist.] 1996, pet. ref'd)). The jury should
have been afforded this option; therefore, the trial court erred in denying the requested jury
instruction.

 When error occurs in failing to properly instruct the jury, our review of the charge is under
the Almanza standard. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on
reh'g). An erroneous or incomplete jury charge does not result in automatic reversal of the
conviction or punishment. Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Instead,
the appellate court "must determine whether sufficient harm resulted from the error to require
reversal." Id. at 731-32; Almanza, 686 S.W.2d at 171. The level of harm an appellant must
demonstrate as having resulted from the erroneous jury instruction depends on whether the appellant
properly objected to the error at trial. Abdnor, 871 S.W.2d at 732. When, as in this case, (9) the
appellant properly objected at trial, reversal is required if the error is "calculated to injure the rights
of defendant"--the appellant need only demonstrate "some harm" on appeal. Id.; see also Almanza,
686 S.W.2d at 171. The degree of harm shown by the appellant must be actual, not merely
theoretical. Almanza, 686 S.W.2d at 174. Nonetheless, the presence of any harm, regardless of the
degree, is sufficient to require reversal of the conviction. Id.

 As discussed above, if the search of the truck was illegal, the drugs discovered in the
subsequent pat-down search are "fruit of the poisonous tree." The drugs are the sole evidence
supporting the verdict. A rational juror could have concluded that Officer Burton could not see
through the tinted windows. If a juror reached such a conclusion, the juror could not consider the
sole evidence that Tilley possessed a controlled substance. We cannot say with confidence that the
error did not cause some harm. 

 As discussed above, Tilley had standing to challenge the search of the inoperable truck
parked on the curtilage of his property. Since there was a fact issue concerning whether Officer
Burton could see through the windows of the truck, Tilley had an absolute right to a jury instruction. 
The trial court erred in failing to so instruct the jury, and the error resulted in some harm. 

 For the reasons stated, we reverse the judgment of the trial court and remand this case to the
trial court for further proceedings consistent with this opinion.



 Bailey C. Moseley

 Justice


Date Submitted: July 30, 2007

Date Decided: September 5, 2007


Do Not Publish
1. Tilley denied that Officer Burton told him where to stand. When asked: "Did the officer
tell you to stay where you were at?" Tilley responded, "No, sir, he never did."
2. The State also argues that Tilley lacks standing to challenge the legality of the arrest. If the
search of the truck violated the Fourth Amendment, the drugs discovered after Tilley was arrested
should also have been excluded. Under Article 38.23, evidence must be excluded once a causal
connection between the illegality and the evidence is established. Roquemore v. State, 60 S.W.3d
862, 870 (Tex. Crim. App. 2001); State v. Daugherty, 931 S.W.2d 268, 270 (Tex. Crim. App. 1996). 
There is a clear causal connection between the search of the truck and the discovery of the drugs. 
Tilley was arrested for items seized during the search of the truck and then subsequently searched. 
The second search is a direct result of the allegedly illegal search of the truck. The taint of the
allegedly illegal search is also not sufficiently attenuated from the subsequent arrest and pat-down
search. See Daugherty, 931 S.W.2d at 270 (suggesting Article 38.23 incorporates the attenuation
of taint doctrine); State v. Johnson, 871 S.W.2d 744, 751 (Tex. Crim. App. 1994) (the attenuation
doctrine is a "method of determining whether evidence was 'obtained' in violation of the law").
3. Dix and Dawson suggest the standard for whether a standing argument was forfeited should
focus on whether the defendant was disadvantaged by the State's failure to challenge the standing
in the trial court. See 43A George E. Dix & Robert O. Dawson, Texas Practice: Criminal
Practice and Procedure § 42.25 (2006). 
4. A person can establish a reasonable expectation of privacy concerning property belonging
to others but in his possession. See United States v. Richards, 638 F.2d 765, 770 (5th Cir. 1981)
(defendant who picked up package for another person had standing); Wilson v. State, 692 S.W.2d
661, 670-71 (Tex. Crim. App. 1984) (op. on reh'g) (defendant who had borrowed car with the
owner's consent had a reasonable expectation of privacy in the automobile). 
5. "
Curtilage" is "the land immediately surrounding and associated with the home" and
warrants the same Fourth Amendment protections that attach to the home. Oliver v. United States,
466 U.S. 170, 180 (1984); Gonzalez v. State, 588 S.W.2d 355, 360 (Tex. Crim. App. [Panel Op.]
1979). We note there is no legitimate expectation of privacy in an open field, or "any unoccupied
or underdeveloped area outside of the curtilage" of a dwelling. Oliver, 466 U.S. at 180. The State
does not argue the truck was in an open field.
6. As discussed below, if the drug paraphernalia was in plain view, Tilley did not have a
reasonable expectation of privacy.
7. Tilley does not dispute that Officer Burton had reasonable suspicion to initiate the encounter. 
Tilley does argue, though, that Officer Burton lacked reasonable suspicion to continue the encounter
after Tilley provided Officer Burton both his identification card and title to the Ford Taurus and the
dispatcher had informed Officer Burton that Tilley had no outstanding warrants and the car was
registered to Tilley. The record contains two factual disputes concerning 1) whether Tilley deposited
an object in the truck or went to the truck to retrieve a pack of cigarettes and 2) whether Officer
Burton told Tilley to stand at a specified location. If the jury believed Tilley's testimony, Officer
Burton may have lacked reasonable suspicion to prolong the encounter. See Ohio v. Robinette, 519
U.S. 33, 40 (1996) (Ginsburg, J., concurring) (the stop may not be used as a "fishing expedition for
unrelated criminal activity"); Davis v. State, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997); cf. United
States v. Valadez, 267 F.3d 395, 399 (5th Cir. 2001) (Garwood, J., concurring) (suggesting prolonged
detention-based standard operating procedures may be reasonable under certain circumstances). 
Because we find there is a fact issue concerning whether the drug paraphernalia was in plain view,
it is not necessary for us to decide whether the brief extension of the encounter was reasonable as
a matter of law or whether the factual disputes created a fact issue. 
8. A warrant based on probable cause is normally required for a search. We note, because of
the mobility of a vehicle and the lessened expectation of privacy, an officer may stop and search a
moving vehicle without a warrant if probable cause has been developed. Carroll v. United States,
267 U.S. 132 (1925); Griffin v. State, 54 S.W.3d 820, 823 (Tex. App.--Texarkana 2001, pet. ref'd). 
However, the vehicle in this case was parked on private property. See Coolidge v. New Hampshire,
403 U.S. 443, 464 n.20 (1971) (plurality op.) (exigent circumstances justifying the automobile
exception did not exist for a vehicle parked in a private driveway). But see Horton v. California, 496
U.S. 128, 137 (1990) (noting Justice Harlan's vote in Coolidge "may have rested on the fact that the
seizure of the cars was accomplished by means of a warrantless trespass on the defendant's
property"). The State does not argue that the automobile exception applies. 
9. Although Tilley did submit a requested instruction to the trial court, the proposed instruction
does not include an application paragraph or explain the plain view doctrine. However, Tilley did
object to the charge, request an instruction pursuant to Article 38.23, identify the reasons that the
charge was deficient, and secure a ruling from the trial court. See Tex. Code Crim. Proc. Ann. art.
36.14 (Vernon 2007). The objections and charge conference were recorded by the court reporter. 
At the charge conference, Tilley argued that Officer Burton could not see through the windows and
that the reasonableness of the encounter ended when the officer was provided with proof of
ownership of the vehicle and informed there were no outstanding warrants. Error was preserved for
appellate review.



pe="rect"/>
 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No.
06-10-00057-CV

                                                ______________________________

 

 

 

                                                                        IN
RE:

CANDI
COOPER

 

 

                                                                                                  


 

                                                                                                                            


                                                     Original
Mandamus Proceeding

 

                                                                                                  


 

 

 

 

                                          Before
Morriss, C.J., Carter and Moseley, JJ.

                                        Memorandum
Opinion by Chief Justice Morriss

                                                                              

                                                                              








                                                      MEMORANDUM
OPINION

 

            Candi Cooper, proceeding pro se, has
filed a petition for writ of mandamus asking this Court to order the Honorable
Paul Banner, sitting for the 115th Judicial District Court of Upshur County,
Texas, to grant her motion to transfer venue in a suit affecting the
parent-child relationship.  Cooper and
David Johnston were divorced February 21, 2007, and appointed joint managing
conservators of Z.B.J., a minor child. 
Although the divorce decree specified the residence of Z.B.J. would be
Upshur County or a contiguous county, Cooper and Z.B.J. moved to Austin, Texas,
in August 2008.  Johnston agreed to the
move and agreed to secure an amended order permitting the residence of Z.B.J.
to be established in Austin, Texas. 
Johnston, though, never obtained the amended order.  According to Coopers petition, Johnston
filed, in Upshur County, a temporary restraining order alleging the use of
marihuana by Coopers current husband endangered Z.B.J.   Coopers petition states that a motion to
transfer venue was filed under Section 155.201 of the Texas Family Code, which
provides for mandatory transfer of venue if the child has resided in the other
county for six months or longer.  See Tex.
Fam. Code Ann. § 155.201 (Vernon 2008).   After a hearing on the motion to transfer
venue, the trial court denied the motion. 


            Mandamus issues only when the
mandamus record establishes (1) a clear abuse of discretion or the violation of
a duty imposed by law and (2) the absence of a clear and adequate remedy at
law.  Walker
v. Packer, 827 S.W.2d 833, 83940 (Tex. 1992); see In re Columbia Med. Ctr.
of Las Colinas, 290 S.W.3d 204, 207 (Tex. 2009).  Under the appropriate circumstances, mandamus
may be an available remedy when a trial court fails to grant a motion to
transfer venue under Section 155.201 of the Texas Family Code.  See Tex. Fam. Code Ann. § 155.201, § 155.204(h)
(Vernon Supp. 2009); In re Kerst, 237
S.W.3d 441, 442 (Tex. App.Texarkana 2007, orig. proceeding); In re Compton, 185 S.W.3d 526, 530 (Tex.
App.Houston [14th Dist.] 2006, orig. proceeding).  

            Cooper, the relator, has failed to
provide this Court with a sufficient record. 
It is the relators burden to provide this Court with a sufficient
record to establish the right to mandamus relief.  Walker,
827 S.W.2d at 837; In re Pilgrims Pride
Corp., 187 S.W.3d 197, 19899 (Tex. App.Texarkana 2006, orig. proceeding);
see Tex.
R. App. P. 52.3.  The record
accompanying Coopers petition for writ of mandamus consists of only the
transcript of the hearing and three exhibits that were introduced during the
hearing.  While the petition does contain
an appendix, the appendix does not include a certified or sworn copy of any
order complained of, or any other document showing the matter complained of.  See
Tex. R. App. P. 52.3(k)(1)(A).  The appendix to Coopers petition contains
only a copy of Section 155.204 of the Texas Family Code and a partial copy of a
Child Protective Services (CPS) report. 
Cooper has failed to provide this Court with a copy of the motion
complained of, the motion to transfer venue and the controverting affidavit, if
any.   See Tex. R. App. P.
52.3(k).  We cannot evaluate Coopers
petition for writ of mandamus without these documents.  We further note the petition does not certify
that a copy was served on all parties to the proceeding.  See Tex. R. App. P. 9.5.  

 

            For the reasons stated, we deny
Coopers petition for writ of mandamus.

 

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date
Submitted:          July 6, 2010     

Date
Decided:             July 7, 2010

 

 

 

OPINION
ON MOTION FOR REHEARING 

            Candi Cooper has filed a motion for
rehearing in which she requests this Court to reconsider our opinion denying
her petition for writ of mandamus.  We
denied Coopers petition for writ of mandamus for failing to include in the
mandamus record presented to this Court a copy of the motion presented to the
trial court.   See Tex. R. App. P. 52.3(k).  Cooper has now attached the motion to
transfer venue and the controverting affidavit to her motion for
rehearing.  Because this case fails to
present unusual circumstances that would justify supplementing the record
after an appellate court has issued its opinion, we overrule Coopers motion
for rehearing.

            Before we can even reach the merits
of Coopers motion for rehearing, we must first address whether Cooper may
supplement the record at this late date. 
Rule 52.7(b) of the Texas Rules of Appellate Procedure, which governs
the supplementation of the mandamus record, provides, [a]fter the record is
filed, relator or any other party to the proceeding may file additional
materials for inclusion in the record.  Tex. R. App. P. 52.7.  Traditionally, however, supplementation of a
record has not been permitted after an opinion has been issued, except under unusual
circumstances.   In re Cervantes, 300 S.W.3d 865, 871 (Tex. App.Waco 2009, orig.
proceeding) (op. on rehg); Chapman v.
Mitsui Engg & Shipbuilding Co., 781 S.W.2d 312, 318 (Tex. App.Houston
[1st Dist.] 1989, writ denied) (op. on rehg); K & S Interests, Inc. v. Tex. Am. Bank/Dallas, 749 S.W.2d 887,
892 (Tex. App.Dallas 1988, writ denied) (op. on rehg); Archer v. Storm Nursery, Inc., 512 S.W.2d 82, 85 (Tex. Civ.
App.San Antonio 1974, no writ) (op. on rehg). 
In three decisions, however, the Texas Supreme Court has not recited the
traditional standard.  We examine those
decisions.

            In Silk v. Terrill, the Texas Supreme Court held [j]udicial economy
is not served when a case, ripe for decision, is decided on a procedural
technicality of this nature.  In the
interests of justice and fair play, cases should be decided on the merits when
deficiencies of this nature can be easily corrected.  898 S.W.2d 764, 766 (Tex. 1995).   The Texas Supreme Court concluded the record
could be supplemented after an opinion had been issued.  Id.

            A few years after Silk, the court held

[S]upplementation of the record
after a case is decided is a different matter. 
It certainly does not serve judicial economy for the appellate court to
allow a supplementation of the record that would require it to reconsider its
decision on the merits when a party has had ample opportunity to correct the
omission prior to decision.  The court of
appeals decided this case not on a procedural technicality but on a record
Worthy failed to supplement even after requesting and being granted leave to do
so.

 

Worthy v. Collagen
Corp., 967
S.W.2d 360, 366 (Tex. 1998).  The court
distinguished Silk because the
omitted item in Silk was attached to
the partys brief and the party requested supplementation following oral
argument and prior to the courts decision. 
Id.

            In
the Interest of K.C.B., a direct appeal of a parental termination, is the
most recent discussion by the Texas Supreme Court of supplementation of a
record after an opinion has been issued. 
251 S.W.3d 514 (Tex. 2008).  The
Texas Supreme Court held the supplementation should have been granted because
(1) there was no purposeful omission similar to Worthy, and (2) the appeal concerned fundamental liberty
interests.  Id.

            Thus, we are faced with the question
of whether, in these opinions, the traditional rule has been rejected by the
Texas Supreme Court.[1]  Silk,
Worthy, and K.C.B. all indicate a preference for a decision to be based on the
merits, rather than a procedural technicality. 
However, they all also recognize limits to the application of this
preference.  All three cases indicate a
certain reluctance to allow supplementation after an opinion has been
issued.  As noted above, none of the
cases explicitly overrule the traditional rule. 
We believe these cases are consistent with the traditional rule.  Silk
specifically distinguishes K & S
Interests, which applied the traditional rule.  Worthy
is consistent with the traditional rule in that the record could not be
supplemented after the issuance of an opinion. 
Finally, K.C.B. is consistent
with the traditional rule in that unusual circumstances were presented.  The unusual circumstance was that the
appeal concerned parental termination, which raises fundamental liberty
interests.  We are reluctant to conclude
the Texas Supreme Court has rejected a well established rule when it has failed
to explicitly overrule the rule and its decisions can be harmonized with the
traditional rule.  Recently, the Waco
Court of Appeals has applied the traditional rule in deciding whether a party
could supplement the record after the issuance of an opinion.  See
Cervantes, 300 S.W.3d at 871 (We accept this unusual circumstances test
as appropriate . . . .).  We conclude
that the traditional rule still governs whether a party may supplement a record
after an opinion has been issued.  Thus,
the remaining question is whether this case presents unusual circumstances.

            The fact that this mandamus action
arises out of a child-custody case does not present unusual circumstances.  This case does not concern the termination of
parental rights.  The termination of
parental rights presents fundamental liberty interests not present in all suits
affecting the parent-child relationship. 
Unlike a direct appeal from a termination proceeding, the custody
dispute in this case is not a permanent decision.  In fact, the ruling from which Cooper seeks
mandamus relief is a venue ruling, that is, a ruling preliminary to any custody
decision.  Although we have not addressed
the merits of Coopers petition, there is no prohibition against Cooper filing
another petition seeking a writ of mandamus. 
This case presents no unusual circumstances.[2]

            We recognize that cases should be
decided on the merits, rather than procedural technicalities, whenever
possible.  However, we are unwilling to
open the floodgates and allow parties in any case that does not present unusual
circumstances to supplement the record after an opinion has been issued.  As stated by the Texas Supreme Court in Worthy, supplementation of the record
after a case is decided is a different matter. 
Worthy, 967 S.W.2d at 366.  Cooper was obligated to present an adequate
record before our opinion issued.  This
case presents no unusual circumstances which would justify allowing
supplementation at this late date.

            For the reasons stated, we overrule
Coopers motion for rehearing.

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date:   August 6, 2010

 

 











[1]The
Texas Rules of Appellate Procedure were amended in 1997 to remove the
traditional distinction between supplementation before submission and
supplementation after submission.  Compare
Tex. R. App. P. 34.6 with Tex. R. App. P. 55, adopted 70708 S.W.2d (Tex. Cases)
p. lxviii-lxix (1986).  We do not believe
this amendment is relevant to the issue presented in this casesupplementation
of the record after an appellate court has issued an opinion.  The traditional rule is not based on the more
stringent requirements contained by the prior rules for supplementation after
submission.  Rather, the traditional rule
was based on three concerns:  (1) the
spirit and purpose of the rules setting forth the appellate timetable, (2) the
spirit and purpose of the rules placing the burden on appellant to see that a
sufficient record is presented to show error requiring reversal, and (3) to
prevent interference with the orderly administration of justice.  K &
S Interests, 749 S.W.2d at 892.





[2]Also,
the fact that Cooper is proceeding pro se fails to present any unusual
circumstances.  The law is well settled
that [a] party proceeding pro se must comply with all applicable procedural
rules and is held to the same standards as a licensed attorney.  Weaver
v. E-Z Mart Stores, Inc., 942 S.W.2d 167, 169 (Tex. App.Texarkana 1997, no
writ).