Affirmed and Opinion filed July 31, 2008








Affirmed and Opinion filed July 31, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00629-CR

NO. 14-07-00634-CR

____________

 

FRED MICHAEL ROTHSTEIN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 185th
District Court

Harris County, Texas

Trial Court Cause Nos. 1101878
& 1113688

 



 

O P I N I O N








Following the denial of his pre-trial motion to suppress,
appellant, Fred Michael Rothstein, pled guilty to (1) possession with intent to
deliver more than four grams but less than four hundred grams of psilocybin;
and (2) possession of less than twenty abuse units of lysergic acid
diethylamide (ALSD@).[1] 
Tex. Health & Safety Code Ann. '' 481.113, 481.1151
(Vernon 2003).  In this consolidated appeal, appellant, in a single issue,
appeals the trial court=s denial of his motion to suppress. 
Finding no error, we affirm.

Factual and Procedural Background

Two witnesses testified during the suppression hearing. 
Deputy Bryan Barriere of the Harris County Sheriff=s Department was
the first witness to testify, followed by Deputy Carlton Horton.

According to Deputy Barriere, on the morning of January 26,
2007, he was dispatched to a burglary in progress at the house located at 14950
Camino Rancho Road.  Deputy Barriere testified the sheriff=s office had
received a call from an unknown person reporting a burglary in progress. Deputy
Barriere was the second deputy on the scene.  After the deputies determined the
front door was locked, they discovered the back door to the house had been
kicked in. Once sufficient deputies arrived to watch the front of the residence
and conduct a search for the burglars, Deputies Barriere, Carrillo, and Quiroz
entered the house through the back door. Deputy Barriere testified he left the
house after initially entering to get a flashlight out of his car and then
reentered the house to continue the search. 

Deputy Barriere testified that, upon entering the house,
the deputies saw parts of the house in disarray; some of the drawers were
pulled out, and some of the cabinets were opened.  The deputies noticed, in plain
view, marijuana in several different locations, a small scale, small plastic
baggies, and grinders used to grind marijuana.  The deputies searched the house
for the burglary suspects, but they did not search any place where a suspect
was unlikely to be found.  After verifying there were no suspects in the house,
the deputies left the house.  According to Deputy Barriere, the search lasted
about fifteen to twenty minutes and the only contraband found in plain sight
was the marijuana and associated paraphernalia.








After completing the search, the deputies asked Deputy
Horton, the deputy in charge of the scene, to enter the house to view the
marijuana.  According to Deputy Barriere, after showing Deputy Horton the
marijuana, the deputies left the house.   While the deputies were standing in
the backyard, Deputy Horton informed the deputies he was leaving to obtain a
search warrant.  Deputy Barriere testified he did not re-enter the house, and
he left after approximately one hour on the scene.  Finally, Deputy Barriere
testified he did not see any of the other deputies re-enter the house prior to
his departure and has no knowledge whether they did so after he left the scene.


Deputy Horton testified next.  According to Deputy Horton,
he was dispatched to the house for a burglary in progress.  Deputy Horton also
testified neighbors told the deputies they had seen two people exiting the back
of the house.  The record is unclear when the neighbors passed this information
along to the deputies.  Deputy Horton arrived after the other deputies, and he
watched the front of the house while the other deputies entered the house to
search for burglary suspects.  Deputy Horton testified he did not enter the
house until after the other deputies told him it was clear and asked him to see
what had been discovered inside the house.  Deputy Horton then entered the
house through the back door and saw the marijuana and paraphernalia.  Deputy
Horton testified he did not conduct any type of search when he entered the house,
but only viewed the contraband that was in plain sight in the bathroom and
family room. 








Deputy Horton then testified he called his supervisor who
instructed him to stop all activity inside the house, post a deputy to watch
the house, and go get a search warrant immediately.  While in the process of
obtaining the search warrant, Deputy Quiroz, who had remained to watch the
house, called Deputy Horton and informed him and the district attorney
assisting Deputy Horton that appellant had arrived at the house.  The district
attorney instructed Deputy Quiroz to take appellant into custody.  Deputy
Horton testified once he obtained the search warrant, he returned to the house
and conducted a thorough search.  During that search, in addition to marijuana
and marijuana paraphernalia, the deputies found and seized multiple plastic
bags, white powdery substances, LSD stamps, and mushroom-type substances.  They
also searched appellant=s car and found cash, additional
mushroom-type substances, and marijuana. 

Under cross-examination, Deputy Horton testified he
probably entered the house twice before ordering the deputies out. Also, Deputy
Horton testified he did not put on latex gloves until after he returned to the
house with the search warrant.  Deputy Horton testified he did see a
surveillance camera mounted on the exterior wall of the house by the back
door.  At that point, appellant revealed the existence of a motion-activated
surveillance video.[2] 
The recording showed some unidentified persons, presumably the burglars, moving
back and forth in front of the surveillance camera and then, some time later,
Deputy Carrillo moving past.  The video also showed deputies moving back and
forth multiple times prior to Deputy Horton obtaining the search warrant.  It
also showed deputies, including Deputy Horton, possibly wearing latex gloves
prior to his return with the search warrant.  After viewing the recording,
Deputy Horton said his previous testimony was incorrect and that he put gloves
on for officer safety prior to obtaining the search warrant.  Deputy Horton
also agreed the surveillance video showed him enter and exit the house while
talking on the phone several times prior to his leaving to obtain the search
warrant.  The video also showed a person Deputy Horton identified as a burglary
investigator, carrying a camera bag, move past the surveillance camera prior to
Deputy Horton departing to obtain a search warrant.  Finally, Deputy Horton
testified he did not physically search anything in the house prior to obtaining
the search warrant and that the deputies found the mushrooms, LSD, and other
items not related to marijuana only after he returned with  the search warrant.









Appellant does not dispute the assertion that the deputies
seized none of the contraband until after Deputy Horton returned with the
search warrant.

At the close of the evidence, appellant argued the trial
court should grant appellant=s motion to suppress because the only
issue was the deputies= credibility or believability which, in
appellant=s view, the surveillance video called into doubt.  The
trial court denied appellant=s motion.  Appellant then pled guilty to
both charges and the trial court assessed appellant=s punishment at
six months= confinement in state jail for the LSD offense and
eight years= confinement in the Institutional Division of the
Texas Department of Criminal Justice for the psilocybin offense.  This appeal
followed. 

Discussion

In a single issue on appeal, appellant contends the trial
court abused its discretion when it denied his motion to suppress because the
police violated his rights under both the Fourth Amendment to the United States
Constitution and Article I, Section 9, of the Texas Constitution when they
searched his residence.[3] 
U.S. Const. amend. IV; Tex.
Const. art. I, ' 9.  Within his single issue, appellant
makes four separate arguments in support of his contention the trial court
abused its discretion when it denied his motion to suppress: (1) Deputy Horton=s entry into
appellant=s residence was not justified by the
exigent-circumstances exception; (2) there was insufficient information
available to the deputies to justify a curtilage search of appellant=s residence; (3)
the deputies continued to search after the exigent circumstances had ended and before
they obtained a search warrant; and (4) the scope of the search expanded after
all exigencies had terminated.[4]









I.        The
Standard of Review

We review a trial court=s ruling on a
motion to suppress under a bifurcated standard of review, giving almost total
deference to the trial court=s findings of historical fact supported by
the record and reviewing de novo the trial court=s application of
the law of search and seizure.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  The trial judge is the exclusive trier of fact and judge of the
credibility of the witnesses and the weight to be given to their testimony at
the suppression hearing.  State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim.
App. 2000).  As the trier of fact, the trial court is free to believe or
disbelieve all or any part of a witness=s testimony, even
if the testimony is uncontroverted.  Id.; Marsh v. State, 140 S.W.3d
901, 905 (Tex. App.CHouston [14th Dist.] 2004, pet. ref=d).  In reviewing
a trial court=s ruling on a motion to suppress, an appellate court
must view the evidence in the light most favorable to the trial court=s ruling.  State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court
fails to make explicit findings of fact, we imply fact findings that support
the trial court=s ruling so long as the evidence supports
these implied findings.  Gutierrez v. State, 221 S.W.3d 680, 687 (Tex.
Crim. App. 2007).  If the trial court=s ruling is
reasonably supported by the record and is correct under any theory of the law
applicable to the case, the reviewing court will sustain it upon review.  Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

II.       Warrantless
Searches








The Fourth Amendment grants individuals Athe right . . . to
be secure in their persons, houses, papers, and effects, against unreasonable
searches and seizures.@  Gutierrez, 221 S.W.3d at 684B85 (quoting
U.S. Const. amend. IV).  A
search conducted without a warrant issued upon probable cause is per se
unreasonable, subject only to a few specifically established and
well-delineated exceptions.  Duhig v. State, 171 S.W.3d 631, 635 (Tex.
App.CHouston [14th
Dist.] 2005, pet. ref=d).  In fact, the search of a residence
without a judicially authorized warrant is presumptively unreasonable.  Gutierrez,
221 S.W.3d at 685.  This does not mean all searches must be conducted under the
authority of a warrant.  Id.  However, the warrant requirement is not
lightly set aside, and the State shoulders the burden to prove an exception to
the warrant requirement applies.  Id.








A variety of situations may place a police officer in
circumstances in which a warrantless entry is viewed as reasonable.  McNairy
v. State, 835 S.W.2d 101, 107 (Tex. Crim. App. 1991).   One justification
for a warrantless search requires the State to show the police officer had
probable cause at the time the search was made, and there were exigent
circumstances that made it impractical to procure a warrant.  Id. at
106.  This exigent circumstances exception applies when the police are acting
in their crime-fighting role.  Laney v. State, 117 S.W.3d 854, 861 (Tex.
Crim. App. 2003).  Exigent circumstances are circumstances which justify the
immediate need to enter a residence without first obtaining a warrant.  Parker
v. State, 206 S.W.3d 593, 597 (Tex. Crim. App. 2006).  To validate a
warrantless search based on exigent circumstances, the State must satisfy a two-step
process.  Gutierrez, 221 S.W.3d at 685.  First, there must be probable
cause to enter or search a specific location.  Id.  In the context of
warrantless searches, probable cause exists when reasonably trustworthy facts
and circumstances within the knowledge of the officer on the scene would lead a
man of reasonable prudence to believe the instrumentality or evidence of a
crime will be found.  Id.  Second, an exigency that requires an
immediate entry to a particular place without a warrant must exist.  Id. 
There are three categories of exigent circumstances that justify a warrantless
intrusion by police officers: (1) providing aid or assistance to persons whom
law-enforcement officers reasonably believe are in need of assistance; (2)
protecting police officers from persons whom they reasonably believe to be
present, armed, and dangerous; and (3) preventing the destruction of evidence
or contraband.  Id.  If the State does not adequately establish both
probable cause and exigent circumstances, then a warrantless entry will not
withstand judicial scrutiny.  Id.  The same facts which give rise to
probable cause may also be relevant to an analysis of exigent circumstances.  See
Parker, 206 S.W.3d at 600B01. 

III.      Did Appellant
Waive His Arguments On Appeal?

Before addressing the merits of appellant=s appeal, we must
address the State=s contention appellant waived several of
his arguments on appeal because they do not comport with appellant=s arguments to the
trial court in his motion to suppress.  Specifically, the State contends
appellant=s only arguments to the trial court in support of his
motion to suppress were (1) Deputy Horton was not credible or believable and
(2) Deputy Horton conducted a detailed search of the house prior to obtaining a
search warrant.  The State then asserts any arguments on appeal by appellant beyond
these have been waived.  In response, appellant argues his broad motion to
suppress is sufficient to preserve error for each of the specific arguments he
raises on appeal.  We agree in part with the State and hold appellant has
waived appellate review of his contention on appeal that Deputy Horton=s initial entry
into his residence was constitutionally improper because the exigent
circumstance had ended once the deputies determined no burglars were inside the
residence.

A.      Preservation
of Error








A motion to suppress is nothing more than a specialized
objection to the admissibility of evidence.  Galitz v. State, 617 S.W.2d
949, 952 n.10 (Tex. Crim. App. 1981).  To preserve a complaint for appellate review,
a party must have presented to the trial court a timely request, objection, or
motion stating the specific grounds for the ruling desired.  Tex. R. App. P. 33.1(a).  A defendant=s appellate
contention must comport with the specific objection made at trial.  Wilson
v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).  An objection stating
one legal theory may not be used to support a different legal theory on
appeal.  Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). 
A reviewing court will not consider errors, even of constitutional magnitude,
not called to the trial court=s attention.  Id.

B.      Appellant
Failed to Preserve Error on His Challenge to Deputy Horton=s Initial Entry








In his motion to suppress, which his trial counsel admitted
was Ageneric,@ appellant argued
only that the trial court should suppress the drugs at issue in this appeal
because the deputies searched his home and vehicle Awithout a warrant,
without probable cause or consent and where the warrant was secured by the
taint of the initial illegal, warrantless, nonconsensual entry into [appellant=s] home.@  (CR00009) Later
in the motion, appellant argued the Asearch and seizure
of evidence from [appellant=s] residence was without probable cause or
reasonable suspicion.@ (CR00019) Finally, appellant asserted Athe stop, arrest
and search of [appellant] and the search of the vehicle and [appellant=s] residence was
without a valid warrant and without any valid authority or consent of [appellant]
whatsoever.@  During the suppression hearing, appellant argued the
trial court should grant his motion to suppress because (1) the deputies were
not credible or believable and (2) the deputies conducted a full search of
appellant=s house prior to obtaining a search warrant.  On
appeal, appellant also contends Deputy Horton=s initial entry
into his house was constitutionally improper even if he did not conduct a
search, because the exigent circumstance ended when the deputies  determined no
burglars were inside appellant=s residence.  Appellant=s generic motion
to suppress was not specific enough to preserve this argument for appellate
review.  See Swain v. State, 181 S.W.3d 359, 365 (Tex. Crim. App.
2005).  In addition, appellant=s argument at the suppression hearing did
not address this contention.  Because appellant=s argument on
appeal does not comport with any objection raised in the motion to suppress or
at the suppression hearing, appellant has failed to preserve error on this
issue.  Tex. R. App. P. 33.1(a).[5]

IV.      Did the
Deputies Conduct an Unconstitutional Search of the Curtilage of Appellant=s Residence?

Appellant contends the deputies lacked probable cause to
conduct a curtilage search of appellant=s residence. 
Because, under the circumstances present in this case, the deputies were
permitted to approach appellant=s back door, we disagree there was an
unconstitutional search of the curtilage of appellant=s residence.

ACurtilage@ is the land
immediately surrounding and associated with the home.  Duhig, 171 S.W.3d
at 637.  The Fourth Amendment protections extend to the curtilage of a home.  Oliver
v. United States, 466 U.S. 170, 180, 104 S. Ct. 1735, 1742, 80 L. Ed. 2d
214 (1984); Gonzalez v. State, 588 S.W.2d 355, 360 (Tex. Crim. App.
1979).








Absent express orders from a person in possession of
property not to trespass, anyone, including a law-enforcement officer, has the
right to approach the front door of a residence and knock on the door.  Duhig,
171 S.W.3d at 635.  In addition, it is permissible for police officers to
approach the back door of a house to contact the residents after they have
first tried the front door and received no answer.  Id. at 637. 
Therefore, because the evidence at the suppression hearing established the
deputies initially tried, and failed, to contact the residents of the home by
way of the front door, they were permitted to approach the back door.[6] 
See id.  Once the deputies approached the back door, they saw the back
door had been kicked in.  This undisputed fact, in conjunction with the call to
police reporting a burglary in progress, provided the deputies both the
probable cause and exigent circumstance needed to enter appellant=s residence
without a warrant so they could determine if burglars were still inside or if
there were victims needing assistance.  See Barocio v. State, 158 S.W.3d
498, 500 (Tex. Crim. App. 2005) (holding the possibility a burglary is in
progress or has been recently committed may provide police officers with
exigent circumstances to justify a warrantless entry).  We overrule appellant=s contention on
appeal that the deputies conducted an unconstitutional search of the curtilage
of his residence.

V.      Did the
Deputies Conduct a Full Search of Appellant=s Residence Before
They Obtained a Search Warrant?

Here, appellant contends the deputies conducted a full
search of his residence prior to obtaining a search warrant.  In support of
this contention, appellant places great importance on Deputy Horton=s testimony that
he entered the residence twice and was also pacing back and forth through the
back door while talking to his supervisor on his cellular telephone, as well as
the images and elapsed time readings from the surveillance video.  Appellant
then argues Athe unavoidable rational inference from this evidence
is that the search for evidence began after all exigencies had terminated.@  We disagree
that, when viewed through the appropriate standard of review, as we must, the
number of times the deputies crossed appellant=s threshold makes
this inference unavoidable.








At the suppression hearing, only two witnesses testified:
Deputies Barriere and Horton.  Deputy Barriere testified he entered appellant=s house two
times.  The first time he entered along with Deputies Quiroz and Carrillo.  He
then testified he left the house to get his flashlight out of his patrol car
and re-entered the house.  Deputy Barriere testified this search for burglary
suspects was brief and they only examined areas in the house where a person
could be concealed.  Deputy Barriere then testified once the deputies had
verified there were no burglars inside, he showed Deputy Horton, the deputy in
charge of the scene, the marijuana and paraphernalia they had found in plain
view inside the house.  Deputy Barriere testified the deputies did not conduct
a full search of the house, and he did not re-enter the house after showing
Deputy Horton the marijuana.  Finally, Deputy Barriere testified he did not see
any other deputy re-enter the house prior to his departure from the scene
approximately one hour after his arrival.

Deputy Horton testified he entered appellant=s house when asked
to do so by the deputies.  Deputy Horton testified he saw the marijuana and
paraphernalia in various locations in plain view.  Deputy Horton denied he
conducted any search of appellant=s house prior to
obtaining a search warrant.  Deputy Horton admitted he entered the house more
than once, including pacing back and forth through the back door while talking
to his supervisor.  In addition, Deputy Horton admitted he may have been
wearing latex gloves during his initial entry into the house, despite his
original testimony that he did not. 








In Johnson v. State, the defendant argued multiple
entries into her residence in response to a 9-1-1 call about a possible murder
were improper because the exigency had ended.  See Johnson v. State, 226
S.W.3d 439, 445 (Tex. Crim. App. 2007).  However, the Court of Criminal Appeals
held: Athe lawfulness of
a search is not determined by the number of times that officers cross the
threshold.  Rather, it is whether the officers are engaged in objectively
reasonable conduct under the circumstances.@  Id.  In
this case, there is simply no testimonial evidence that, prior to obtaining a
search warrant, the deputies on the scene conducted anything more than a quick
search of appellant=s house to locate any burglars that might
be present.  The surveillance video, lasting significantly less than a minute,
does not show any deputy conducting a search, instead, it only shows images of
deputies moving back and forth in front of the camera.  There was no testimony
specifying the location of the video camera.  In addition, appellant admitted
the actual time of day reading on the surveillance video was not accurate and
offered no evidence to establish the accuracy of appellant=s calculation of
the elapsed time.  The trial court, as the trier of fact, was permitted to take
all of these items into consideration when evaluating the evidence.

Here, the trial court heard the testimony of Deputies
Barriere and Horton, viewed the surveillance video, and still concluded the
deputies did not conduct an improper search of appellant=s residence. 
Based on the evidence in the record, we conclude the trial court could
reasonably have found the deputies= conduct was
reasonable under the circumstances and that Deputy Horton=s actions prior to
obtaining the search warrant were incidental to and a valid continuation of the
initial exigent circumstances search by Deputies Barriere, Quiroz, and
Carrillo.  See Shoaf v. State, 706 S.W.2d 170, 175 (Tex. App.CFort Worth 1986,
pet. ref=d) (holding the
entry of detectives into residence after exigency had ended was
constitutionally acceptable because it was in the course of pursuing an
administrative duty to tag, pick up, and preserve evidence seen by original
officer during exigent search of premises).  We hold the trial court did not
abuse its discretion when it determined the deputies conducted a constitutional
exigent-circumstances search of appellant=s residence.[7] 
Therefore, we overrule appellant=s contentions on
appeal that the deputies improperly searched his residence prior to obtaining a
search warrant.

Conclusion

Having overruled each sub-issue raised in appellant=s single issue on
appeal, we hold the trial court did not abuse its discretion when it denied
appellant=s motion to suppress.  

 

 








Accordingly,
we overrule appellant=s issue on appeal and affirm the judgment
of the trial court.

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Opinion filed July 31, 2008.

Panel consists of
Justice Yates, Anderson, and Brown.

Publish C Tex. R. App. P. 47.2(b).

 









[1]  The possession with intent to deliver more than four
grams but less than four hundred grams of psilocybin conviction was in trial
court cause number 1101878 and is being appealed in cause number
14-07-00629-CR.  The possession of less than twenty abuse units of LSD
conviction was in trial court cause number 1113688 and is being appealed in
cause number 14-07-00634-CR.





[2]  There was no evidence admitted during the
suppression hearing specifying the location of the camera taking the motion-
activated video.





[3]  Because appellant has not provided any explanation or authority for
construing the Texas Constitution as conferring greater protection in this area
of the law than the federal constitution, we will not separately address his
state constitutional argument.  See Black v. State, 26 S.W.3d 895, 896
n.4 (Tex. Crim. App. 2000). 





[4]  Because appellant=s
third and fourth contentions raise the same argument, that the deputies
conducted a full search of appellant=s
residence after the exigencies had terminated and before acquiring a search
warrant, we will address them together.





[5]  We determine appellant adequately preserved error on
his remaining appellate arguments.  First, appellant contends the deputies possessed
insufficient information to justify a curtilage search of appellant=s residence.  Because a warrantless
search of the curtilage of a residence requires probable cause, appellant
preserved this issue for appellate review when he specifically raised the lack
of probable cause as a basis for his motion to suppress.  Pool v. State,
157 S.W.3d 36, 42 (Tex. App.CWaco 2004, no pet.).  Finally, appellant specifically raised his
remaining points on appeal during the suppression hearing.





[6]  We note there was no evidence in the record the back
yard was enclosed by a fence.





[7]  Because an appellant cannot raise a new issue in a
reply brief, we need not address appellant=s
argument, raised in his reply brief, that Deputy Horton=s search warrant affidavit was inadequate.  Tex. R.
App. P. 38.3.